399 So.2d 1068 (1981)
Don JONES, G. Patrick Iley, Jeanne Malchon, Charles E. Rainey and Cliff Stephens, As Members of and Constituting the Board of County Commissioners of Pinellas County, Florida, Appellants,
v.
FIRST VIRGINIA MORTGAGE AND REAL ESTATE INVESTMENT TRUST, Appellee.
No. 79-2276.
District Court of Appeal of Florida, Second District.
June 19, 1981.
*1069 Andrew J. Rodnite, Asst. County Atty., Clearwater, for appellants.
Thomas F. Icard, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellee.
PER CURIAM.
Pinellas County downzoned certain property while a developer was seeking approval of a preliminary site plan for a project *1070 exceeding the new density restrictions. Appellee, the financing institution which had supplied the funds with which the developer purchased the site, acquired the property by foreclosure when the developer defaulted on the loan. This action was then instituted to enjoin the county from enforcing the new zoning as to that site. The original complaint and a first amended complaint were dismissed for failure to state a cause of action, but appellants' motion to dismiss the second amended complaint was denied on the ground that a cause of action for equitable estoppel had been stated. Appellee then moved for summary judgment on the ground that the uncontradicted facts established equitable estoppel as a matter of law. Appellants countered with their own motion for summary judgment, on the ground that the facts established the absence of equitable estoppel, as a matter of law. Appellee's motion was granted without explication of reason or ground. We reverse the summary judgment.
In 1973 Williams Development Corp. paid a $10,000 deposit on (1) a contract to purchase approximately 13 1/2 acres out of a parcel of land situated in an area known as Coopers Point, and (2) an option to purchase the remainder of the parcel (approximately half) for $750,000 less any sums paid for the first half. The contract provided that the price was to be determined by the number of residential units that could be constructed on the land. The base price was set at $375,000 if 253 units could be constructed on the "Phase I" plot. The contract also provided:
4. This Agreement is subject to the Property being zoned to permit the construction of apartments and having a permissible density of not less than five hundred and six (506) units, and that said zoning and allotment of density requirements as hereinbefore mentioned be evidenced by an official letter from the proper zoning official of the County of Pinellas delivered to Buyer prior to closing. This Agreement is also subject to the issuance of building and use permits on the Property for two hundred fifty-three (253) units prior to the date of closing. If said permits have not been so obtained or said official letter is not so delivered, Buyer shall have the option to terminate this Agreement and have its deposit returned, or to waive the requirements and close the sale.
Two months later Williams assigned the contract to Financial and Development Corporation of North America (hereinafter Financial Corp.) for $205,000. Shortly thereafter the owners of the property met with Charles V. Zimmerman, a zoning technician in the Pinellas County Department of Planning, and requested confirmation that the property in question was zoned RPD-15. In response, Zimmerman sent them a letter on May 31, 1973, stating in part:
The Bay Harbor Residential Planned District, a 25-acre MOL tract ... has been approved for a total of 506 units.[1] In accordance with the ... zoning regulations ... the Bay Harbor site would allow a five-story building elevation provided they are in compliance with the additional setbacks.
The final construction plan would require submittal to, and approval by, the Pinellas County Board of County Commissioners. Also this parcel ... has a minimum elevation requirement for the first floor living area of nine (9) feet above mean sea level.
 Sincerely,
 Charles V. Zimmerman
 Zoning Technician
Financial Corp. then made arrangements to conclude the purchase of the first half of the tract and commence the construction of Phase I of a complex to be known as Sea Pines. Acquisition and construction money in the total sum of $5,000,000 was committed by appellee on several conditions, among them:

*1071 9. PURPOSE OF LOAN: The proceeds of the loan will be used to acquire fee simple title to a tract of land containing approximately 24.7 acres ...; to develop for apartment use approximately 13.5 acres of said tract and to construct thereon a minimum of 253 garden and mid-rise apartment units; and to develop for apartment use the remaining portion of the security tract.
10. SECURITY: The loan will be secured by:
a. A first mortgage encumbering approximately 13.5 acres of the following-described tract of land [and encumbering the entire tract after the Phase II land is acquired].
11. DISBURSEMENTS:
a. Approximately $550,000 shall be disbursed at closing to pay the acquisition cost of Phase I land, costs incidental to closing, a portion of the loan brokerage fees and a portion of the additional interest on subject loan.
b. Approximately $375,000 shall be disbursed at the time the Phase II tract of land is acquired by borrower, at which time lender's mortgage will be modified to include the Phase II tract in the land encumbered thereby.
16. SUPPORTING DOCUMENTS: As soon as practicable, and in any event prior to the making of any disbursements for construction or development purposes, lender shall be furnished for approval with any of the following items it has not yet received:
a. Site Plan: A Site Plan for subject project, which plan if required by local law, must have been approved on its face by all of the appropriate public authorities.
b. Building Permits: Building permits from appropriate public officials.
17. SUPPORTING DOCUMENTS FOR CLOSING REQUIREMENTS: As soon as practicable, and in any event prior to closing, lender shall be furnished for approval with any of the following items it has not yet received:
f. Zoning: Evidence satisfactory to lender that the proposed project complies with the relevant building and zoning code including a copy of the relevant ordinances.
The loan escrow closed in July, 1973, and Financial Corp. completed the purchase of the Phase I plot. At no time, either prior or subsequent to the consummation of the purchase, did Financial Corp. obtain or even apply for any building permits. At that time any developer desiring building permits for a Pinellas County project first had to obtain approval by the Board of Commissioners of a preliminary site plan, then obtain approval of a final site plan, then obtain a land-use permit and then apply for a building permit. Assuming final approval of a site plan, building permits would automatically issue so long as consistent with such site plan AND prevailing building, electric and other such codes, together with elevation and setback requirements.
The mortgage executed by Financial Corp. in favor of appellee provided in part:
Mortgagor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the premises or any part thereof.
Shortly after completing the purchase of the land, Financial Corp. submitted for the first time, a preliminary site plan to the County Department of Planning and requested that informal meetings of interested citizens in the neighborhood of the proposed Sea Pines subdivision be held in the recreation hall of an adjacent condominium complex. Opposition to the project was immediate and massive. The opponents organized and hired a lawyer. They attacked the proposed development on the grounds that (1) it would place 506 apartments squarely in the middle of a single family residential area, (2) existing school facilities were inadequate to handle such an influx into the neighborhood, (3) the streets in the area were inadequate to handle (4) the substantially increased traffic that would result, (5) the water supply in the area was *1072 inadequate to serve such an increase in population, and (6) the project would have a severe impact on various aspects of the local ecology.
The preliminary site plan was rejected because it did not comply with applicable county ordinances. It was revised by Financial Corp. and resubmitted, rejected again, revised again and resubmitted, and finally, on February 12, 1974, the planning department recommended to the Board of Commissioners that the latest revision of the preliminary site plan be approved. In the meantime, however, the opponents had been bringing extreme pressure to bear on the board to rezone the area back to single family and thus bar not only the Sea Pines project but all others like it in the future. Twice, on January 29 and February 12, 1974, the Sea Pines preliminary site plan was placed on the board's agenda for consideration, and both times the matter was continued because of the heavy turnout of dissenting residents. Finally, on March 19, 1974, at a meeting attended by over 300 residents from the affected area, the board instructed the County Planning Department to study and prepare a proposal for the rezoning of not only the Sea Pines tract but several other plots near it as well, and requested the department to devise a master plan for the development of the entire area. The resultant proposed master plan included a recommendation from the planning department that various zoning changes, including the downzoning of the Sea Pines tract from RPD-15 to RPD-7.5, be made in order to implement the overall plan. After a publicly noticed and heavily attended hearing, the board on June 25, 1974, rezoned the area as recommended.
By that time Financial Corp. had spent some $73,000, including legal fees, in connection with preparing, revising and presenting the preliminary site plan. Thereafter Financial Corp. defaulted in payments on the $550,000 initially distributed to it by appellee and in 1976 appellee foreclosed its mortgage, thereby obtaining ownership of the Phase I land.
On this appeal the commissioners first challenge appellee's standing to maintain this action, and then argue that in any event the evidence was clearly inadequate to establish an estoppel and, therefore, summary judgment should have been entered in their favor.

I

STANDING TO MAINTAIN ACTION
Appellants argue that if anyone sustained "special damages" from the rezoning it would have been Financial Corp., and not appellee. They point out that even if by funding the acquisition of the property appellee qualified as a purchaser, that would not constitute an item of special damages because the mere purchase of land does not create a right to rely on existing zoning, and they cite our decisions in Pasco County v. Tampa Development Corp., 364 So.2d 850 (Fla. 2d DCA 1978) and Town of Largo v. Imperial Homes Corp., 309 So.2d 571 (Fla. 2d DCA 1975). Since the only other item of possible damage was the $73,000 spent by Financial Corp. in presenting the preliminary site plan, and Financial Corp. is not even a party to this proceeding, appellants argue that appellee sustained no special damage and therefore had no standing to challenge the rezoning, citing Skaggs-Albertson's v. ABC Liquors Inc., 363 So.2d 1082 (Fla. 1978) as authority for that assertion.
The flaw in appellants' argument is that our supreme court made it quite clear in Skaggs that the "special damage" rule applies only where a litigant seeks to enforce an ordinance. Where an ordinance which has been validly enacted is attacked as an excess or abuse of police power, only a "legally recognizable interest" is required of the plaintiff. 363 So.2d at 1087. This court has held that one who finances a real estate development adversely affected by zoning enactments may have a legally recognizable interest in challenging the zoning ordinance, depending upon the circumstance of the case, and if such interest is found, then the doctrine of equitable estoppel may *1073 be available to the lender. Jones v. U.S. Steel Credit Corp., 382 So.2d 48 (Fla. 2d DCA 1979).

II

EQUITABLE ESTOPPEL
There is no question about the fact that the rezoning constituted a serious and perhaps fatal impediment to the Sea Pines project, or at least to the degree of financial success anticipated by the principals. Appellee, as previously noted had no interest in the profitability of the project except to the extent that repayment of its loan would be affected. For purposes of the present discussion, we will assume that appellee advanced at least $550,000 to Financial Corp. under the loan commitment and that the land was not worth even $375,000 unless a density of 15 units per acre were permitted. With that assumption, the question then becomes whether the rezoning was inequitable.
That question cannot be answered by looking solely at the consequences of the rezoning insofar as Financial Corp. and appellee were concerned. Quite obviously they sustained a distinct disadvantage. Notwithstanding the fact that they voluntarily proceeded into a known peril when they elected to consummate the purchase without having obtained the building permits specified by the purchase agreement, still no observer or reviewer of the situation could fail to sympathize with their present unfortunate plight.
The cold fact of the matter, however, is that at some juncture it becomes the unpleasant duty of someone to weigh the disadvantages of rezoning against the disadvantages of not rezoning. That is properly the function of the legislative body charged with responsibility for protecting and enhancing the health, welfare and safety of the public  in this case, the county commissioners. Once their difficult task has been completed, and a decision reached, no court should substitute its judgment for theirs, and their decision should not be overturned except upon a clear showing of either an abuse of discretion, some invalidating impropriety in procedure, or a failure to take proper cognizance of controlling law. Dade County v. Yumbo, S.A., 348 So.2d 392 (Fla. 3d DCA 1977).
There is nothing in the record before us to so much as suggest, let alone establish, that the rezoning in question was anything other than a proper, reasonable exercise of police power for the health, welfare and safety of the general public. Appellee commendably refrains from serious argument to the contrary. The conclusion, however, that the new ordinance is valid is not determinative of this appeal. The main thrust of appellee's argument is that the ordinance, even though valid, should not be enforced as to the proposed site of the Sea Pines project. Unlike the question of whether to rezone, which required the legislative body to weigh individual and public equities, the question of whether to enjoin enforcement must be resolved by the courts, and requires a weighing of the inequity to the individual should the ordinance be enforced. Just as with the initial weighing, the decision of the trial court also should not be upset except where discretion has been abused. Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10, 15 (Fla. 1976).
It is inevitable that legislation designed to promote the welfare of the public may seriously impair individual rights. It would be a rare occurrence indeed if the zoning of an area did not have financial disadvantages to someone within it. Yet if the police power could be wielded only if no one were affected adversely, the government would be impotent. The welfare of the many would be totally subordinate to the interests of a few.
In an effort to reconcile the conflicting interests, the courts have devised certain rules which protect the public and at the same time assure just treatment of truly deserving individuals. Some types of injury are declared insufficient to merit redress. Among them is the loss occasioned by a zoning or rezoning prohibiting a use which was permissible when the property *1074 was purchased, even though it may have been the use for which the property was specifically acquired. Pasco County v. Tampa Development Corp., supra; Town of Largo v. Imperial Homes Corp., supra. Our supreme court put it this way in City of Miami Beach v. 8701 Collins Avenue, 77 So.2d 428 (Fla. 1954):
All that one who plans to use his property in accordance with existing zoning regulations is entitled to assume is that such regulations will not be altered to his detriment, unless the change bears a substantial relation to the health, morals, welfare or safety of the public.
Appellee does not quarrel with those principles, but claims that the commissioners are estopped to enforce the new zoning restrictions. It is true that sometimes the harsh consequences of an exercise of police power can be avoided by application of the doctrine of equitable estoppel, but the conditions which will trigger such relief are tightly circumscribed, lest an "unwise restraint [be placed] upon the police power of the government." City of Miami Beach v. 8701 Collins Avenue, supra. Estoppel arises only where one with a legally recognizable interest in property (1) has made such a substantial change in his position, (2) in good faith reliance upon some act or omission of the government, that it would be highly inequitable and unjust to destroy (3) the rights he has acquired. Town of Largo v. Imperial Homes Corp., supra.
In the case of a lender, it might be said, as we did in Jones, that in one sense he "stands in the shoes" of the developer. Nevertheless, appellee has the burden of showing its own detrimental change of position if the protection of the estoppel doctrine is to be extended to it. A change of position by the developer or a detriment suffered by the developer, by itself, would not redound to a lender's benefit.
The sole evidence that appellee did anything that might constitute a "change of position" was in lending the money to be used for the purchase of the property. Yet, even one who purchases property, much less the party who finances the purchase, has no legal right to assume that existing zoning may not change. Town of Largo v. Imperial Homes Corp., supra. Estoppel can come about only if the change of position is induced by an official act performed under circumstances giving rise to a reasonable conclusion that the government knew or should have known that its act would be relied upon in that very manner. Pasco County v. Tampa Development Corp., supra. For instance, in Jones, the county reaffirmed its upzoning of the property with the knowledge that the lender intended to make its loan in reliance upon that zoning.
We can find nothing in the facts of this case that would satisfy that requirement. At the outset, the fact that Financial Corp. elected to close the purchase and appellee chose to make the loan without first requiring the issuance of the site plan and building permits specified in the purchase agreement flies in the face of the contention that there was a bona fide change of position in reliance that the permits would be issued. Appellee relies heavily (almost solely) on the Zimmerman letter, but even were we to accept, for purposes of argument, appellee's assertion that a zoning technician is an official possessing authority to bind the county,[2] the fatal fact remains that the letter did nothing more than state what zoning restrictions were then in effect. The letter was purely informative, as the trial court specifically ruled. Moreover, Zimmerman expressly warned the owners of the property that approval of the Sea Pines project would have to be obtained from the commissioners. Zimmerman properly refrained from so much as hinting at what the board might or might not do regarding either the planned project or the existing zoning. The only information he gave could have been obtained as easily from the county librarian, or anyone else with access to the county ordinances.
Thus, we conclude that the doctrine of equitable estoppel did not apply here, and *1075 the judgment of the trial court is erroneous if predicated upon that ground.
Appellee argues that even if the trial court committed (more aptly, was led into) error in that regard, still the judgment should be affirmed if it is right for any reason. That is a correct statement of a basic principle of appellate review, but it doesn't help appellee, which mistakes certain statements in our opinion in Smith v. City of Clearwater, 383 So.2d 681 (Fla. 2d DCA 1980), as support for its present position. In that case we held that even in the absence of estoppel, a property owner is entitled to receive a building permit which is within the provisions of existing zoning so long as there is no rezoning ordinance pending at the time of the application which would prohibit the intended use. That case involved the direct relationship between the owner of property and the governmental authority seeking to restrict the use of his property through zoning. We did not intend that a third party lender could claim the benefit of this principle.
The appellant, rather than the appellee, should have been granted the summary judgment.
REVERSED.
SCHEB, C.J., and GRIMES and OTT, JJ., concur.
NOTES
[1] We cannot fathom the mathematics involved here. A project covering 25 acres, and built to a density of 15 units per acre, would total 375 units rather than 506 units. However, neither side questions those figures and the case is in no way dependent upon that point, so we will assume that there is some explanation.
[2] In Barefield v. Davis, 251 So.2d 699 (Fla. 1st DCA 1971), the court held that a promise by a member of the board of commissioners did not give rise to an estoppel.