DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EVERETT BROTHERS RECYCLING, INC.,** and **WATERBLASTING TECHNOLOGIES, LLC,** d/b/a **HOG TECHNOLOGIES,**
Appellants,

v.

**MARTIN COUNTY** and **SA RECYCLING, LLC,**
Appellees.

No. 4D2023-2943

[January 22, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Michael J. McNicholas, Judge; L.T. Case No. 432021CA001103.

Gary K. Oldehoff of Gary K. Oldehoff PA, Stuart, for appellants.

Sarah W. Woods, County Attorney, and Melissa Lynn Pietrzyk, Assistant County Attorney, Stuart, for appellee Martin County.

Tim B. Wright and Paul J. Parton of Wright, Ponsoldt & Lozeau Trial Attorneys, L.L.P., Stuart, for appellee SA Recycling, LLC.

LEVINE, J.

Appellants Everett Brothers Recycling, Inc. ("Everett"), and Waterblasting Technologies, LLC, d/b/a Hog Technologies ("Waterblasting") appeal an order dismissing with prejudice their second amended complaint against appellees Martin County and SA Recycling, LLC. The trial court based the dismissal order on four grounds: lack of standing, the county's discretion in interpreting its codes, mootness, and failure to exhaust administrative remedies. We agree with the trial court that appellants lacked standing because they did not allege special damages differing not only in degree, but in kind, from the injury suffered by the community at large. As such, we affirm. Because we find this ground dispositive, we need not reach the merits of the other grounds. *See Bullard v. Canale*, 260 So. 2d 237, 238 (Fla. 4th DCA 1972) (stating affirmance is warranted "if any single ground in support of the order is upheld and is alone sufficient to sustain the order").

Martin County issued code violations to the prior owners of SA Recycling for operating an illegal salvage yard. The prior owners and the county entered a stipulation and agreed final order, which was approved by a special magistrate, stating that the prior owners would "cease using the property as a salvage yard." The stipulation and agreed final order further stated that the property was permitted instead to be used for "scrap metal recycling."

Subsequently, appellants filed a complaint, and later an amended complaint, against Martin County. SA Recycling intervened and later was named as an additional defendant. The operative second amended complaint stated that appellant Everett operates a scrap metal salvage business in Martin County and that appellant Waterblasting also operates a manufacturing plant directly across the street from SA Recycling. Appellants alleged that SA Recycling, which now was under different ownership, was operating an illegal scrap metal salvage yard in violation of Martin County's zoning ordinances and land use regulations. Appellants further alleged that the stipulation and agreed final order was the result of county employees engaging in ultra vires acts.

The second amended complaint alleged two counts directed at the county and one count directed at SA Recycling. The counts against the county sought: (1) a declaration that the stipulation and agreed final order with the prior owners of SA Recycling was "void and ultra vires, and of no force and effect," and (2) a declaration that "the use allowed" and "the use being conducted on the property" violated SA Recycling's "M-2" zoning. The count against SA Recycling sought injunctive relief in favor of Waterblasting for nuisance.

Martin County and SA Recycling filed answers and affirmative defenses, including lack of standing. The county moved to dismiss based on lack of standing, among other grounds, because appellants did not have "special damages peculiar to themselves" differing from those suffered by the community as a whole, as required under *Boucher v. Novotny*, 102 So. 2d 132 (Fla. 1958). SA Recycling also moved to dismiss, attaching a copy of the stipulation and agreed final order to its motion.

After a hearing, the trial court dismissed the second amended complaint with prejudice. The trial court found that appellants lacked standing as they "failed to allege special damages differing in degree than from damages suffered by the community as a whole pursuant to *Boucher*." Appellants appeal this order.

2

Appellants argue that the trial court erred in finding they lacked standing under *Boucher* because the supreme court receded from *Boucher* in *Renard v. Dade County*, 261 So. 2d 832 (Fla. 1972). Appellants claim that under *Renard* and its progeny, special damages are not required to challenge and correct an ultra vires act.

We disagree and find that the trial court did not err in dismissing the second amended complaint with prejudice based on lack of standing under *Boucher*. Appellants were required to allege and show special damages differing in kind, not merely in degree, from the injury to the general public at large. Appellants failed to do so.

"Generally, the standard of review of a dismissal for failure to state a cause of action is de novo. However, in cases where the complaint seeks declarative relief, the standard of review is abuse of discretion." *Guttenberg v. Smith & Wesson Corp.*, 357 So. 3d 690, 693 (Fla. 4th DCA 2023) (citation omitted). Thus, the standard of review is abuse of discretion as to the declaratory judgment claims and de novo as to the nuisance claim.

"In determining whether to dismiss a complaint for lack of standing, we must confine our review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept all well-pled allegations in the complaint as true." *Llano Fin. Grp., LLC v. Yespy*, 228 So. 3d 108, 111 (Fla. 4th DCA 2017) (citation omitted). However, "where the terms of a legal document are impliedly incorporated by reference into the complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss." *SBP Homes, LLC v. 84 Lumber Co.*, 384 So. 3d 241, 244 (Fla. 4th DCA 2024) (citation omitted).

"Standing requires a sufficient interest in the outcome of litigation before the court will consider the matter." *Llano Fin. Grp.*, 228 So. 3d at 112. To have standing, a plaintiff must (1) "demonstrate an injury in fact, which is concrete, distinct and palpable, and actual or imminent," (2) "establish a causal connection between the injury and the conduct complained of," and (3) "show a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Citizens for Responsible Dev., Inc. v. City of Dania Beach*, 358 So. 3d 1, 5 (Fla. 4th DCA 2023) (citation omitted). A "mere statutory violation" does not show "a concrete injury sufficient for standing." *Southam v. Red Wing Shoe Co.*, 343 So. 3d 106, 108, 111 (Fla. 4th DCA 2022). "[A] purely illegal action in the absence of resulting harm does not confer standing on an individual. Rather, individuals must allege some threatened or actual injury resulting from

the putatively illegal action." *Id.* at 110 (citation and internal quotation marks omitted).

Under the "special injury" rule, "which developed in the area of public nuisance law," an individual can maintain suit to enjoin a nuisance only if that person can "show injury different both in kind and degree from that suffered by the public at large." *Fla. Wildlife Fed'n v. State Dep't of Env't Reg.,* 390 So. 2d 64, 67 (Fla. 1980). In *Boucher,* the supreme court extended the special injury rule to zoning suits. *See id. Boucher* stated that "one seeking redress, either preventive or corrective, against an alleged violation of a municipal zoning ordinance must allege and prove special damages peculiar to himself differing in kind as distinguished from damages differing in degree suffered by the community as a whole." 102 So. 2d at 135.

Subsequently, in *Renard,* the supreme court addressed three types of attacks on zoning ordinances and the standing requirements for each category:

> Part (1) deals with *standing to enforce a valid zoning ordinance.* The *Boucher* rule requiring special damages still covers this type of suit. . . .[1]
>
> Part (2) of the question certified to this Court deals with standing to attack a validly enacted zoning ordinance as being an unreasonable exercise of legislative power. . . . [P]ersons having a legally recognizable interest, which is adversely affected by the proposed zoning action, have standing to sue.
>
> Part (3) of the question certified deals with *standing to attack a zoning ordinance which is void because not properly enacted, as where required notice was not given.* Any affected resident, citizen or property owner of the governmental unit in question has standing to challenge such an ordinance.

261 So. 2d at 837-38 (emphasis added).

---

[1] Although not relevant to the disposition of this case, the supreme court noted: "However, in the twenty years since the *Boucher* decision, changed conditions, including increased population growth and density, require a more lenient application of that rule. The facts of the *Boucher* case, if presented today, would probably be sufficient to show special damage." *Renard,* 261 So. 2d at 837-38.

Contrary to appellants' contention, the supreme court did not recede from *Boucher* in *Renard* or in any subsequent decisions. Rather, in *City of West Palm Beach, Inc. v. Haver*, 330 So. 3d 860, 864 (Fla. 2021), the supreme court, relying on *Boucher*, stated that special damages were required for claims of declaratory and injunctive relief requesting that the city enforce zoning violations. Our court also has recently held that a plaintiff must show a special injury to have standing to enforce a zoning ordinance. *Citizens for Responsible Dev.*, 358 So. 3d at 6.

In the instant case, the first category in *Renard* applies, which requires "special damages" for "standing to enforce a valid zoning ordinance." 261 So. 2d at 837. The second amended complaint sought (1) a declaration that the stipulation and agreed final order was "void and ultra vires, and of no force and effect," and (2) a declaration that "the use allowed" and "the use being conducted on the property" violated SA Recycling's "M-2" zoning. Appellants' arguments were premised on their allegation that SA Recycling's use of the subject property was not an authorized use for an "M-2" zoning district. Thus, appellants effectively sought to enforce the "M-2" zoning ordinance. As such, appellants' claims fell under the first category identified in *Renard*—standing to enforce a valid zoning ordinance—which requires special damages.

In *Citizens for Responsible Development*, our court held that the plaintiffs' allegations that the city failed to comply with its own ordinances, which the plaintiffs sought to enforce, fell under the first category in *Renard*; thus, the plaintiffs were required to show a special injury. 358 So. 3d at 6. Like in *Citizens*, in the present case, appellants alleged that the county failed to comply with its own zoning ordinances and land development regulations. Thus, appellants were required to show special damages.

Appellants argue that special damages are not required because the third category in *Renard* applies. That category grants "standing to attack a zoning ordinance which is void because not properly enacted, as where required notice was not given." *Renard*, 261 So. 2d at 838. Appellants argue that the actions of the county employees—entering the stipulation and agreed final order permitting SA Recycling's current use of the property—was "unauthorized by law, ultra vires, and null and void."

Contrary to appellants' contention, we find that the third category of *Renard* is inapplicable by its plain language. No challenge was made to a zoning ordinance that was "not properly enacted." Nor does the instant case involve a situation "where required notice was not given."

Appellants conflate the difference between the *enforcement* of an ordinance, which falls under the first category in *Renard* and requires special damages, with the *enactment* of an ordinance, which falls under the third category. Appellants' claims are based on their assertion that the use permitted under the stipulation and agreed final order was not a permitted use in an "M-2" zoning district. Appellants argue that the stipulation and agreed final order permits SA Recycling to operate a salvage yard, which is permitted only in an "SY" zoning district. Thus, appellants are attempting to enforce the use permitted in an "M-2" zoning district.[2] This falls under enforcement that is in the first category in *Renard*. Appellants are not challenging a zoning ordinance on the grounds that it was not properly enacted, but rather are effectively seeking enforcement of the M-2 zoning district. The stipulation and agreed final order is not a zoning ordinance. The stipulation and agreed final order pertained to use and enforcement only.

Under appellants' logic, not enforcing a zoning ordinance is the equivalent of improperly enacting a zoning ordinance. Appellants would essentially eliminate any difference between the first and third categories, and special damages would thus never be required under any circumstances. Further, following appellants' rationale, any settlement would be subject to attack. If "not properly enforced" meant "not properly enacted," special damages would conceivably never be required, and everyone could object. This is not the law. *See Chapman v. Town of Redington Beach*, 282 So. 3d 979, 983 (Fla. 2d DCA 2019) (stating that the rule requiring special damages "serves to limit the avalanche of litigation that might otherwise result from any alleged zoning violation; one need not have a surfeit of imagination to picture the results if every member of a community bothered by a single zoning violation was authorized to bring the same suit against the same defendant alleging the same general type of harm").

Appellants did not allege special damages differing in kind, not merely in degree, from those suffered by the community as a whole. Appellants alleged that Everett operates a "lawful" "scrap metal salvage" business in Martin County. To comply with Martin County's ordinances and land development regulations, Everett alleges it had to make over $800,000 in improvements. These improvements included the construction of a 40-foot-wide landscaping buffer and an 8-foot-high concrete block wall and berm around the entire perimeter of the property. Everett complained that

---

[2] "M-2" zoning is a type of industrial district, while salvage yards are operated in "SY" districts. Martin Cnty., Land Dev. Reg., art. 3, div. 7, §§ 3.421, 3.424.

SA Recycling had not been required to incur such expenses, thus giving SA Recycling a financial advantage and causing harm to Everett.

Everett's claim does not constitute a special injury. "[L]oss of business from a potential competitor ordinarily cannot provide the existing proprietor with the requisite standing." *Skaggs-Albertson's v. ABC Liquors, Inc.*, 363 So. 2d 1082, 1090 (Fla. 1978). Additionally, any claim of financial loss is merely speculative. *See Boucher*, 102 So. 2d at 136 ("A bald allegation of irreparable injury which is not accompanied by specific allegations of fact will not warrant the granting of relief."). Further, Everett cannot "establish a causal connection between the injury and the conduct complained of." *Citizens for Responsible Dev.*, 358 So. 3d at 5 (citation omitted).

Waterblasting also did not allege sufficient special damages. Waterblasting alleged that it was directly across the street from SA Recycling. Waterblasting also generally alleged, without further elaboration, that SA Recycling's illegal "salvage yard" was an "eyesore" that caused "dust and dirt," "pollution of waters on and around" Waterblasting's property, and "noise and traffic congestion."[3]

The alleged dust, dirt, pollution, noise, and traffic—which one might expect in an industrial district—would have been suffered alike by all property owners in the area. The fact that Waterblasting was across the street from SA Recycling does not give rise to standing. *See Cont'l Con-Dev Co. v. Shallberg*, 267 So. 2d 40, 42 (Fla. 4th DCA 1972) (finding plaintiffs lacked standing to enforce a zoning ordinance, notwithstanding the fact that their home was across the street from defendant's property); *accord Boucher*, 102 So. 2d at 136. Increased traffic is also not a special damage. *See Citizens for Responsible Dev.*, 358 So. 3d at 7 (citing *Skaggs-Albertson's Props.*, 332 So. 2d at 117); *Fla. Palm-Aire Corp. v. Delvin*, 230 So. 2d 26, 27-28 (Fla. 4th DCA 1969). "[I]n an industrial area a reasonable use of property often places some burden upon the property of one's neighbor . . . ." *Lee v. Fla. Pub. Utils. Co.*, 145 So. 2d 299, 302 (Fla. 1st DCA 1962) (citation omitted). Further, "[m]ere disturbance and annoyance as such do not in themselves necessarily give rise to an invasion of a legal right." *A. & P. Food Stores, Inc. v. Kornstein*, 121 So. 2d 701, 703 (Fla. 3d DCA 1960).

In conclusion, because appellants attacked a zoning violation, they

---

[3] Presumably, the alleged water pollution was due to dust and dirt, but the second amended complaint did not contain any details or further elaboration.

were required, but failed, to allege "special damages peculiar to [themselves] and differing in kind rather than in degree from the damages suffered by the people as a whole." *Boucher*, 102 So. 2d at 135. As such, we find the trial court did not err in dismissing the second amended complaint with prejudice based on lack of standing and, thus, we affirm.

*Affirmed.*

GROSS and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

8