363 So.2d 1082 (1978)
SKAGGS-ALBERTSON'S, Petitioner,
v.
ABC LIQUORS, INC., and Liquor World, Inc., Respondents.
No. 52560.
Supreme Court of Florida.
September 7, 1978.
Rehearing Denied November 28, 1978.
*1083 James A. Urban of Urban, Peirsol, Williamson & Davis, and James E. Slater of Maguire, Voorhis & Wells, Orlando, for petitioner.
J. Sam Owens, Jr. of Fishback, Davis, Dominick & Simonet, and William L. Eagan of Arnold, Matheny & Eagan, Orlando, for respondents.
SUNDBERG, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the District Court of Appeal, Fourth District, reported at 349 So.2d 657 (Fla. 4th DCA 1977), which announced a rule of law relating to standing required to contest zoning decisions that conflicts with a rule previously announced in Renard v. Dade County, 261 So.2d 832 (Fla. 1972). We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution.
Petitioner, Skaggs-Albertson's, owns a grocery and liquor store which is located in the same complex. However, petitioner created the liquor store to have its own entrance with no access from the liquor to the main grocery store pursuant to Section 565.04, Florida Statutes (1975), which requires *1084 that package stores be devoted exclusively to the sale of alcoholic beverages and that they have no openings to other buildings or rooms. The respondents own competing liquor stores with respondent ABC's store being within close proximity to petitioner's business.
Petitioner applied to the Division of Beverages of the Department of Business Regulation for a license to sell alcoholic beverages as mandated by Chapter 561, Florida Statutes. As part of its application for the license, petitioner was required to submit a permit from the zoning director of Orange County reflecting that the location meets the zoning requirements of Orange County. The zoning director refused to issue the required permit, certifying that to do so would violate a zoning resolution of Orange County prohibiting the construction of a package store which is located within 5,000 feet of an existing liquor store. That section of the Orange County zoning resolution explaining the method to be employed in measuring the distance states:
The distance provided in this resolution shall be measured by following the shortest route of ordinary pedestrian travel along the public thoroughfare from the proposed main entrance of a vendor who proposes to operate his place of business and is licensed under Ch. 561, Florida Statutes, to the main entrance of any other vendor who was operating such a business.
Subsection 4, Article XXV, Section 15, Zoning Resolution of Orange County.
As demonstrated by the attached illustration, the zoning director interpreted this section in such a way that the main entrance of petitioner's liquor store was determined to be less than 5,000 feet from the main entrance of respondent ABC's store. Conversely, the illustration shows that petitioner's proposed method of measurement (identified as trial court's route) would satisfy the zoning resolution.

[See following illustration.]
*1085 
*1086 Petitioner appealed the determination of the zoning director to the Board of Zoning Adjustment of Orange County which reversed the decision of the zoning director. Respondents then appealed this decision to the Board of County Commissioners pursuant to Section 15 of Chapter 63-1716, Special Acts, Laws of Florida, which provides:
Any person aggrieved by any decision of the ... board of zoning adjustment may file a notice of appeal to the Board of County Commissioners...
The Board of County Commissioners reversed the decision of the Board of Zoning Adjustment. Subsequent to the decision of the Board of County Commissioners, petitioner filed a petition for writ of certiorari in circuit court. Respondents, ABC Liquors, Inc. and Liquor World, Inc., intervened. The circuit court granted the writ of certiorari, reversed the decision of the Board of County Commissioners, and ordered the zoning director to issue petitioner's Certificate of Zoning Approval. On the face of its order, the circuit court found that the intervenors had standing to appeal the decision of the Board of Zoning Adjustment to the Board of County Commissioners and that the proper method of measurement was that suggested by petitioner. Respondents then appealed to the District Court of Appeal, Fourth District. Petitioner cross-assigned as error the finding of the circuit court that respondents had standing to appeal the decision of the Board of Zoning Adjustment to the Board of County Commissioners. The district court reversed the circuit court, ruling adversely to petitioner on all points.
Petitioner now renews its assertions that (1) respondents did not have standing to appeal the decision of the Board of Zoning Adjustment to the Board of County Commissioners or to appeal the decision of the circuit court to the District Court of Appeal, Fourth District, and (2) the District Court of Appeal, Fourth District, erred in reversing the decision of the circuit court with regard to the interpretation of the zoning ordinance at issue. For the reasons that follow, we find that respondents were "aggrieved" persons within the meaning of Section 15, Chapter 63-1716, Special Acts, Laws of Florida, and that the District Court of Appeal, Fourth District, was correct in reversing the decision of the circuit court with respect to the proper interpretation to be placed on the zoning ordinance.
We initiate our discussion of standing to contest zoning decisions by noting that this area of the law appears to be characterized by instability. It will be our endeavor to stabilize this issue by attempting to resolve the apparent inconsistencies created by the various appellate decisions which have entertained the subject.
In Boucher v. Novotny, 102 So.2d 132 (Fla. 1958), this Court enunciated the principle that one seeking redress, either preventive or corrective, against an alleged violation of a municipal zoning ordinance must allege and prove special damages peculiar to himself differing in kind, as distinguished from differing in degree, from damages suffered by the community as a whole. The plaintiff owned property across the street from the property on which defendant Novotny was building a motel. Plaintiff alleged that certain projections of the building would violate the setback requirements of the city's zoning ordinance. In affirming the circuit court's dismissal of the complaint on the grounds of lack of standing, this Court announced the rule that:
We have on a number of occasions held that where municipal officials threaten or commit a violation of municipal ordinances which produces an injury to a particular citizen which is different in kind from the injury suffered by the people of the community as a whole then such injured individual is entitled to injunctive relief in the absence of an adequate legal remedy. With equal consistency, however, we have likewise held that in order to sustain a complaint for relief against threatened or consummated municipal action such as the creation of a nuisance or the blocking of a street the injury suffered by the complaining individual must be special and peculiar to *1087 himself and not merely different in degree from that suffered by the remainder of the community. In other words, the complaining citizen along with all other people in the community might suffer some injury and it may be that the extent of the injury suffered by the one complaining is greater in degree than that suffered by many other citizens. Nevertheless, the complaining citizen is without redress in equity unless he can allege and prove special damages peculiar to himself and differing in kind rather than in degree from the damages suffered by the people as a whole.
102 So.2d at 134 (citations omitted). Recognizing that the aforementioned rule had been applicable to abatement of nuisances, this Court found that it was equally apposite to actions seeking to remedy or prevent breaches of municipal zoning ordinances.
Fourteen years later we had the opportunity to revisit this area in Renard v. Dade County, supra. In that case, petitioner and respondents owned adjoining parcels. Respondents applied for a rezoning of their parcel to multifamily residence, which was ultimately granted. Petitioner objected during the stages of administrative appeal. Following adverse determinations, petitioner sought review by certiorari in the circuit court which ruled against petitioner, finding that he had no standing to prosecute the matter in that he had alleged no special interest. On appeal, the District Court of Appeal, Third District, held that petitioner had sufficient standing to institute the suit, but since the rezoning question was "fairly debatable," the trial court's decision should have been approved. Nevertheless, the court found the question to be of sufficient public interest to certify it to this Court. Specifically, the certified question concerned:
"The standing necessary for a plaintiff to (1) enforce a valid zoning ordinance; (2) attack a validly enacted zoning ordinance as not being fairly debatable and therefore an arbitrary and unreasonable exercise of legislative power; and (3) attack a void ordinance, i.e., one enacted without proper notice required under the enabling statute or authority creating the zoning power."
261 So.2d at 834.
After noting that a division had developed among the district courts on the issue of standing to sue in zoning matters following the Boucher decision, the Renard Court answered the certified question as follows:
The question certified to this Court, set out supra, has three parts. Part (1) deals with standing to enforce a valid zoning ordinance. The Boucher rule requiring special damages still covers this type of suit. However, in the twenty years since the Boucher decision, changed conditions, including increased population growth and density, require a more lenient application of that rule. The facts of the Boucher case, if presented today, would probably be sufficient to show special damage.
Part (2) of the question certified to this Court deals with standing to attack a validly enacted zoning ordinance as being an unreasonable exercise of legislative power. As indicated above, persons having a legally recognizable interest, which is adversely affected by the proposed zoning action, have standing to sue.
Part (3) of the question certified deals with standing to attack a zoning ordinance which is void because not properly enacted, as where required notice was not given. Any affected resident, citizen or property owner of the governmental unit in question has standing to challenge such an ordinance.
261 So.2d at 837-38 (footnotes omitted).
It therefore became important to determine into which category a particular case fell, for different rules of standing applied depending on whether the action sought to enforce a valid zoning ordinance, whether it attempted to attack a validly enacted zoning ordinance as being an unreasonable exercise of legislative power, or whether it involved an attack upon a zoning ordinance which was void because not properly enacted.
*1088 The reason for these disparate rules was apparently historical. As suggested in Renard, the "special damage" rule was an outgrowth of the law of public nuisance. Inasmuch as a public nuisance was an offense against the state and, accordingly, was subject to abatement on motion of the proper governmental agency, an individual could not maintain an action for a public nuisance unless he suffered some special damage from the public nuisance. Restatement of Torts, Chapter 40, Invasion of Interests in Private Use of Land, Introductory Note (1939); North Dade Bar Association v. Dade Commonwealth Title Insurance Co., 143 So.2d 201 (Fla. 3d DCA 1962). Because one of the historical antecedents of zoning was the law of nuisances,[1] violations of valid zoning ordinances came to be treated as public nuisances for purposes of determining rules of standing. Thus, the Renard Court stated that "[t]he Boucher rule was not intended to be applied to zoning matters other than suits by individuals for zoning violations." 261 So.2d at 835. However, when the zoning ordinance itself was challenged either on substantive or procedural grounds, there was no longer the historical predicate for invoking the "special damage" rule.[2]
This Court again had the occasion to enunciate its steadfast support for the "special damages" rule in United States Steel Corp. v. Save Sand Key, Inc., 303 So.2d 9 (Fla. 1974), a case involving a nuisance action, and found that the rule serves a contemporary jurisprudential function which undoubtedly accounts for its continued viability. Quoting with approval from Askew v. Hold the Bulkhead  Save Our Bays, Inc., 269 So.2d 696 (Fla. 2d DCA 1972), this Court adopted the following language as its own:
"Neither of appellees has alleged or shown that one or the other of them will suffer a special injury or that either has a special interest in the outcome of this action. In order to maintain this kind of action, absent a sufficient predicate to a proper class suit (and there is no such predicate here), it is well settled that a plaintiff must allege that his injury would be different in degree and kind from that suffered by the community at large.
"If it were otherwise there would be no end to potential litigation against a given defendant, whether he be a public official or otherwise, brought by individuals or residents, all possessed of the same general interest, since none of them would be bound by res judicata as a result of prior suits; and as against public authorities, they may be intolerably hampered in the performance of their duties and have little time for anything but the interminable litigation.
[We again exclude from this rationale a proper `class action.']"
303 So.2d at 12 (citations omitted).
It is clear then that the "special damage" rule still has vitality in both nuisance actions and actions seeking to enforce a valid zoning ordinance, albeit that rule has acquired a more liberal application.
The question arises whether the proprietor of an existing business has standing to challenge a zoning decision authorizing a competitor to do business solely on the ground that he suffers injury because of loss of business. In Skaggs-Albertson's Properties, Inc. v. Michels Belleair Bluffs Pharmacy, Inc., 332 So.2d 163 (Fla. 2d DCA 1976), the District Court of Appeal, Second District, answered this question in the negative. The appellant, in that case, proposed to construct a combination grocery and drug retail store. After appellant received its building permit but prior to the commencement of construction, appellee sought to enjoin construction on the store. The court found, inter alia, that appellee did not have standing and stated:

*1089 The fact that Michels might lose business because of competition from Skaggs' drugstore operation cannot provide the requisite standing. Cord Meyer Development Co. v. Bell Bay Drugs, Inc., 1967, 20 N.Y.2d 211, 282 N.Y.S.2d 259, 229 N.E.2d 44.[3]
332 So.2d at 116.
In announcing the principle that the prevention of competition is not a proper element of zoning, the Michels court echoed a rule recognized by a number of authorities in other jurisdictions. Mott's Realty Corp. v. Town Plan & Zoning Commission of Windsor, 152 Conn. 535, 209 A.2d 179 (1965); Farr v. Zoning Board of Appeals, 139 Conn. 577, 95 A.2d 792 (1953); Benson v. Zoning Board of Appeals, 129 Conn. 280, 284, 27 A.2d 389, 391 (1942); 179 Duncan Ave. Corp. v. Board of Adjustment of Jersey City, 122 N.J.L. 292, 293, 5 A.2d 68 (1939); Lehrer v. Board of Adjustment of City of Newark, 137 N.J.L. 100, 58 A.2d 265 (1948); Town of Clinton v. Standard Oil Co., 193 N.C. 432, 137 S.E. 183 (1927); Board of County Supervisors of Fairfax County v. Davis, 200 Va. 316, 106 S.E.2d 152 (1958); Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 86 N.E.2d 920 (1949); Metzenbaum Zoning (2d Ed.), Ch. X-m-(10).
In the instant case, the District Court of Appeal, Fourth District, appeared to deviate from this principle when it explained:
We can think of no one more interested in the establishment of a liquor store than another liquor store nearby. The effect to the established liquor store is certainly an economic one; to increase competition is to reduce income, usually.
349 So.2d at 660.
The court relied in part on Keating v. State, 173 So.2d 673 (Fla. 1965), for this proposition. Keating involved the revocation of a liquor license which was issued to the tenant of a building. The revocation order provided that no liquor license could be issued for use at the location of the building for two years. The landlord of the premises sought to alter the revocation order which request was granted by a subsequent Beverage Director. The respondent, a competitor of the landlord, then succeeded in obtaining an order enjoining the Director from modifying the original revocation. Keating v. State, 167 So.2d 46 (Fla. 1st DCA 1964). Subsequently, petitioner, the incumbent State Beverage Director, sought certiorari review in this Court contending the respondent had no legal standing to challenge the order of petitioner's predecessor. This Court found that the requisite standing existed and held:
We are convinced that we should recede from Baker v. State ex rel. Hi-Hat Liquors, Inc., supra, insofar as it holds that a licensee competitor has no standing to maintain an action of the kind here involved merely because as a business competitor the profits or commercial advantages which he might gain in eliminating his competition "are too elusive and uncertain to sustain the action."
173 So.2d at 675.[4]
Considering the case on the merits, the Court decided that because the liquor industry was carefully regulated by the government, a liquor license had come to have the quality of property. Accordingly, the license could not be revoked without giving the landlord notice and opportunity for a hearing as mandated by due process.
Petitioner attempts to detract from the significance of Keating by emphasizing that it was not a zoning case and, therefore, not subject to the particular requirements of *1090 standing which this Court has ruled applicable to such cases. Secondly, petitioner suggests that the Keating Court expressly stated it was receding from Hi-Hat only insofar as it applied to actions of the type involved in Keating, i.e., a case involving the revocation of a liquor license and not one in which a competitor was seeking enforcement of a valid zoning ordinance.
Respondents contend that Keating stands for the principle that the proprietor of an alcoholic beverage store has standing to object when a competitor violates a valid and existing law regulating his business because he has suffered some special damage. This is so because that industry is characterized by stringent governmental regulation, and, therefore, the reestablishment of a store at an alternate location is made more difficult thereby. We agree. Underlying the decision of this Court in Keating was the notion that a liquor license is a form of property bestowing certain special rights to the liquor licensee different from those rights ordinarily accruing to the licensee of another business. The Keating Court adopted language in House v. Cotton, 52 So.2d 340 (Fla. 1951), which stated:
"Even though a liquor license may have the character of a mere privilege insofar as governmental regulation of the alcoholic beverage industry is concerned, it must be recognized that in this state, as well as in many other states, due to the limitations respecting the number and location of liquor establishments and the conditions under which the license is issued, a liquor license has come to have the quality of property, with an actual pecuniary value far in excess of the license fees exacted by the state, county, and city."
173 So.2d at 676.
Thus, the package store operator who loses his license suffers a special kind of injury. He may not be permitted to relocate in a desired location or, conceivably, may not be able to obtain another license at any other location. When a competitor opens a shop in his locale, the licensee runs the risk of being forced from his present place of business. He must then attempt to relocate pursuant to all the limitations respecting the number and location of liquor establishments. Unlike Skaggs-Albertson's Properties, Inc. v. Michels Belleair Bluffs Pharmacy, Inc., supra, in which appellee sought to prevent the construction of a drug and grocery store, the instant case attempts to proscribe the erection of a package store. While the number and proximity of liquor vendors are stringently regulated, the number of drugstores is not. Consequently, although we adhere to the general rule enunciated in Skaggs-Albertson's Properties, Inc. v. Michels Belleair Bluffs Pharmacy, Inc., supra, that loss of business from a potential competitor ordinarily cannot provide the existing proprietor with the requisite standing, we find that an alcoholic beverage dealer tends to suffer a special injury when confronted with a nearby competitor because of the regulation applicable to him and his business.
In the instant case, the District Court of Appeal, Fourth District, correctly found that respondents had the requisite standing but incorrectly applied the principles enunciated in Renard. That court substituted the "legally recognizable interest" rule for the "special damages" rule when it stated:
Skaggs has raised the question of standing. We find the case of Renard v. Dade County, 261 So.2d 832 (Fla. 1972) to be on point: "... persons having a legally recognizable interest, which is adversely affected by the proposed zoning action, have standing to sue."[5]
349 So.2d at 660.
The instant case questions the interpretation of a valid zoning ordinance. There has been no challenge to the validity of the ordinance itself either on substantive or procedural grounds. Accordingly, respondents had to prove special damages in *1091 order to be "aggrieved" persons under Section 15, Chapter 63-1716, Special Acts, Laws of Florida. Pursuant to Keating v. State, supra, we believe respondents have made the requisite showing of special damage.
Petitioner's second point challenges the decision of the District Court of Appeal, Fourth District, in reversing the circuit court with regard to the interpretation to be placed on the applicable zoning ordinance. We find that the conflicting interpretations urged by petitioner and respondents are both reasonable and, consequently, find that the Board of County Commissioners acted in accordance with the essential requirements of law in reaching its decision. The circuit court, therefore, transcended the scope of its certiorari review by substituting its judgment for that of the local zoning authority. Because zoning or rezoning is the function of the appropriate zoning authority and not the courts,[6] the circuit court was not empowered to disapprove the finding of the Board unless the record was devoid of substantial competent evidence to support the Board's decision.
Accordingly, the writ of certiorari is discharged.
It is so ordered.
ADKINS, BOYD and HATCHETT, JJ., concur.
ENGLAND, C.J., and OVERTON, J., dissent.
NOTES
[1] 12 U.Fla.L.Rev. 16, 27 (1959); Wis.L.Rev. Vol. 1955: 440.
[2] Opinions following the "special damages" rule include Banyan Cafeterias, Inc. # 3 v. Faith Lutheran Church, 151 So.2d 426 (Fla. 1963); Continental Con-Dev Co. v. Shallberg, 267 So.2d 40 (Fla. 4th DCA 1972).
[3] See also Wyatt v. City of Pensacola, 196 So.2d 777 (Fla. 1st DCA 1967); Fogg v. City of South Miami, 183 So.2d 219 (Fla. 3d DCA 1966); Abdo v. City of Daytonia Beach, 147 So.2d 598 (Fla. 1st DCA 1962).
[4] In Baker v. State, 159 Fla. 286, 31 So.2d 275 (1947), a preemptory writ of mandamus was issued by the circuit judge, ordering the Director of State Beverage Department to revoke a retail liquor package store license issued to Baker on the ground that his place of business was within 300 feet of a school site in violation of a statute. Hi-Hat, a competitor whose store was outside the prescribed 300-foot zone, brought suit to enforce the zoning ordinance. Finding that Hi-Hat's declared object was to eliminate Baker as a competitor, this Court held that Hi-Hat had no special interest sufficient to sustain the suit.
[5] We note that the District Court of Appeal, Third District, in Rayan Corporation, Inc. v. Board of County Commissioners of Dade County, 356 So.2d 1276 (Fla. 3d DCA 1978), a case having substantially the same issue as the instant cause, concluded similarly to the district court herein.
[6] Hillsborough County v. Twin Lakes Mobile Home Village, 166 So.2d 191 (Fla. 2d DCA 1964); Sarasota County v. Walker, 144 So.2d 345 (Fla. 2d DCA 1962); City of Tampa v. Consolidated Box Co., 110 So.2d 446 (Fla. 2d DCA 1959).