# FULLER v METROPOLITAN DADE COUNTY COMMISSION, et al.

## Case No. 85-055-AP

Eleventh Judicial Circuit, Appellate Division, Dade County

April 3, 1986

### APPEARANCES OF COUNSEL

**Sheridan K. Weissenborn** for appellant.

**Robert Ginsburg,** County Attorney, and **Craig H. Coller,** Assistant County Attorney, for appellee, Metropolitan Dade County.

**Simon Ferro** for appellee, Anoviv Realty Company, Inc.

Before TENDRICH, KAYE, NADLER, JJ.

### OPINION OF THE COURT

NADLER, J.M.

This case comes before us from the denial of an Appeal by the

Metropolitan Dade County Commission (the Commission) of a decision by the Metropolitan Dade County Zoning Appeals Board (ZAB). The facts before the ZAB were as follows:

On or about January 31, the Dade County Building and Zoning Department, Enforcement Division, issued its Notice of Violation to Appellee on its finding that people were living in trailers and in a tar paper shack at Appellee's Anoviv Realty Company, Inc. (Anoviv) property, zoned IU-1, in contravention of the Metropolitan Dade County Code (the Code). On or about April 6, 1984, Appellee, Anoviv, filed for a public hearing to permit the complained of use on the subject property. As part of its application, Anoviv stated:

1. The use of the property for the purpose of stationing or parking recreation vehicles for living or sleeping quarters has existed for approximately ten years without adversely impacting the surrounding area.

2. The use of the property for stationing or parking recreation vehicles for use as living or sleeping quarters takes place only from the months of November to May and is therefore not a year round use; and

3. Denial of the application would result in an unreasonable burden and hardship upon applicants and its employees by depriving the employees of a rent-free location to station or park their recreational vehicles.

The ZAB heard the matter on December 12, 1984 and, upon recommendation of the Planning Department and Zoning Director of Dade County, the ZAB by resolution approved Appellee, Anoviv's request.

Appellant here timely appealed the matter to the Commission and, on January 24, 1985, the Commission heard Appellant and, by denying Appellant's appeal, affirmed the action of the ZAB. This affirmance is the subject of the Commission's Resolution Z-24-85.

The substance of ZAB's and the Commission's Resolutions was to permit employees of Anoviv to place a limited number of trailers on the IU-1 zoned property and to use the property as an employee trailer camp for a period of ten years, a use otherwise prohibited under such zoning category. Concrete tiedowns and landscaping were required of Anoviv as a condition to such use.

Appellant argues that the action by the ZAB and the Commission in considering the matter was flawed because there was no showing of any hardship imposed on Anoviv's property by the literal interpretation of the applicable zoning ordinance (the Code). Anoviv and the Commis-

**171**

sion argue that the use requested by Anoviv falls with a "special exception" as an "unusual use" and that, therefore, no showing of hardship was required.

We agree with Anoviv and the Commission that the test of constitutionality of a zoning ordinance is its relationship to the public health, safety, welfare and morals. *City of Miami Beach v. Weiss*, 217 So.2d 836 (Fla. 1969); *City of Miami v. Rosen*, 151 Fla. 677, 10 So.2d 307 (Fla. 1942); *Board of County Commissioners of Dade County v. Soto*, 259 So.2d 196 (Fla. 3d DCA 1972).

We agree with Anoviv and the Commission, too, that zoning ordinances and resolutions come before a court with a presumption of validity, and a party seeking to set them aside must show that the application of such ordinances or resolutions to the property in question is arbitrary or unreasonably applied. *City of Miami Beach v. Ocean & Inland Co.*, 3 So.2d 364 (Fla. 1941); *Smith v. City of Miami Beach*, 213 So.2d 281 (Fla. 3d DCA 1968).

In determining the unreasonability and arbitrariness of an ordinance or resolution, Anoviv and the Commission correctly cite *Village of Euclid v. Ambler Realty Company*, 272 U.S. 365, 47 S. Ct. 114, 74 L.Ed. 303 (1926) and its local progeny to support the proposition that any determination is "fairly debatable". This rule has been interpreted to mean that an affirmance must follow unless the record before the governmental authority "was devoid of competent evidence to support the Board's [the Commission's here] decision." *Skagg's—Albertson's v. ABC Liquors, Inc.*, 363 So.2d 1082 (Fla. 1978), at page 1091.

However, the issue here does not turn on the law cited by Appellees. The question presented, as we see it, is whether or not the Code prescribes a method for reviewing an "unusual use" that can avoid the requirement that a "variance" be granted on property only where there is a showing that hardship is imposed upon the applicant's property. Neither Anoviv nor the Commission have urged this Court to determine that the effect of Resolution Z-24-85 is not to permit "a use of land other than which is prescribed by zoning regulations . . ."; but this is exactly within the definition of a "use variance" under the Code, Section 33-311(e)(1).

We perceive our task to be to construe the Code and, in doing so, we are governed by rules of construction applicable to statutes generally. *Rinker Materials Corp. v. City of North Miami*, 286 So.2d 552 (Fla. 1973) conformed to 288 So.2d 536 (Fla. 3d DCA 1974).

The primary and controlling rule of construction is to determine

legislative intent. *Rinker Materials Corp. v. City of North Miami*, supra. In furtherance of this quest, where one section of an act· is applicable to another section, we must construe them altogether to determine legislative intent. *In re Opinion to Governor*, 60 So.2d 321 (Fla. 1952). This rule compels us to consider the Code in its entirety. Moreover, where one construction of an act is too broad to fit within the confines of legislative power, we must construe it, if possible, to exclude such power. *City of Jacksonville v. Ledwith*, 26 Fla. 163, 7 So. 885 (Fla. 1890)

Utilizing each of these rules, we are impelled to conclude that the Commission, in enacting the Code, intended to promulgate a uniform and consistent method with ascertainable and definable standards for reviewing "use[s] of land other than which is prescribed by zoning regulation. . . . ." That method is set out in both Sections 33-311(d) and 33-311(e)(1). The ascertainable standards are also set out in both of these Sections. We believe that the Code and these Sections must be read in pari materia and that, when so read, the Code is consistent and uniform and without constitutional impediment. This interpretation requires us to determine that "hardship" must be shown in every case where a use variance within the definition of the Code, Section 33-311(e)(1) is sought, whether it be for an "unusual use" or otherwise. To hold differently would require us to interpret a legislative design to permit the litany of "unusual and new uses" described in the Code, Section 33-13 to avoid the requirement of "hardship" required of "use variances". Included in the Code, Section 33-13 uses are incinerators, junk yards, oil and gas wells, pistol ranges, rock pits and rock quarries, asphalt plants, concrete batching and concrete block plants and sewage treatment plants. We do not believe that the Commission, as legislators, intended to relieve property owners seeking such disparate and, in some cases, objectionable, uses from the requirements imposed on others for varying the use of their properties.

If we interpreted the Code as urged by Appellees, we would have to determine that a person seeking a "usual use" variance (i.e., a use not within the description of uses specified in the Code, Section 33-13), no matter how slight, was required to meet a higher and stricter standard than a person seeking an "unusual use" variance, no matter how great. We are unwilling to impute such illogic to the Commission as legislators when to do so would create arbitrary and capricious divisions and different standards without justification.

The record before us does not support any showing of hardship imposed upon Anoviv's property by the literal interpretation of the applicable provisions of the Code. If Anoviv desires to supply rent-free

**173**

accommodations to its employees, it can do so without resort to varying the uses in the manner allowed under Resolution Z-24-85.

Accordingly, we hold that Resolution Z-24-85 is a departure from the Code and was passed in violation thereof. The Resolution as applied to Appellant here is arbitrary and unreasonable. We, therefore, quash and strike down the Resolution.