677 So.2d 905 (1996)
Robert L. KAGAN, M.D., Magda Alzuri, David Morris, Virginia Morris, Dr. Alvan Balant, Dr. Linda Civercitia Balant, Gerald D. Jordan, Deni S. Jordan, Michele Burpee and William Burpee, Appellants/Cross-Appellees,
v.
Charles E. WEST, Jr. and Gisela West, Appellees/Cross-Appellants,
The City of Fort Lauderdale, a Municipal Corporation, and John Smith in His Official Capacity as Director of Planning Zoning and Building for the City of Fort Lauderdale, Appellees.
No. 95-1802.
District Court of Appeal of Florida, Fourth District.
July 3, 1996.
Rehearing and Clarification Denied August 30, 1996.
*906 Nancy W. Gregoire, Thomas R. Bolf and Steven R. Levine of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellants/cross-appellees.
Michael D. Stewart of Michael D. Stewart, P.A., Fort Lauderdale, for appellees/cross-appellants.
PARIENTE, Judge.
This case involves a dispute among appellants, landowners who reside along a private street in Fort Lauderdale, and their neighbors, appellees Charles R. West, Jr. and Gisela West (the Wests). At the center of the dispute is a two-story cabana which was constructed by the Wests. Appellants claimed that the cabana violated an access easement and the City of Fort Lauderdale's (the City) setback and building height restrictions. They sought an injunction to require the removal of the cabana and monetary *907 relief for damages occasioned by the presence of the cabana.
Because an ambiguity exists in the access easement as to whether reciprocal rights were granted to all adjacent landowners, we reverse the trial court's determination that all appellants other than Kagan and Alzuri (the Kagans) lacked standing to assert a violation of the access easement. Because the adjacent landowners allege special damages different from those suffered by the community as a whole, we further reverse the trial court's determination that all appellants lacked standing to assert City building code violations.
The parties to this action own land and live along the eastern end of a street formerly known as Southeast Fourth Street in Fort Lauderdale, Florida. The former Southeast Fourth Street is a peninsular residential block located just south of Las Olas Boulevard and just east of downtown Fort Lauderdale. The homes on the south side of the street back onto the New River and the homes on the north side back onto the Himmarshee Canal. The street deadends at its easternmost end where the canal bends to meet the river.
In 1981, the then-owners of the property requested that the City vacate the 40-foot public right-of-way down the center of the street in order to make Southeast Fourth Street a private street, thus excluding the public except for invitees or licensees of the residents. In conjunction with their request, each of the owners executed two easements: 1) a Perpetual Utility Easement and Easement for Governmental Services (government easement) and 2) a Declaration of Easement for Ingress and Egress (access easement).
The City agreed to vacate the public right-of-way and each landowner became the owner of that portion of the street abutting that owner's property up to the centerline of the street, subject to the easements. The neighbors lived in apparent harmony until the Wests' construction of the cabana, which encroaches upon the easement area. Appellants claim the cabana not only limits their ability to walk down the street to the canal, but also blocks their view of the New River.
The issue of appellants' standing to enforce the access easement involves the interpretation of the owners' intent in granting the access easements. The trial court interpreted the access easement to give access only to landowners who lived across the street and to the east of each grantor. Because the Wests lived at the easternmost end of the street, the trial court determined that only the Kagans, who also lived at the easternmost end of the street, directly across the street from the Wests, had standing to assert a violation of the Wests' access easement. Appellants assert that all of the Wests' neighbors along the former Southeast Fourth Street have standing because it was the intent of each property owner granting the access easement to give reciprocal rights to all the grantors to use the street in the same manner as all grantees, including the Kagans and the Wests. Appellants assert that the trial court erred when it failed to consider the minutes of a City Commission meeting which expressed this precise intent.
The easement specifically granted by the Wests' predecessor in title was part of a common Declaration of Easement for Ingress and Egress. Although the specific grant of easement by the Wests' predecessor ran only in favor of the Kagans' predecessor and not the other neighbors, paragraph eight of the declaration, common to all easements, provides:
The easements hereinabove described shall be non-exclusive and may be utilized by the parties granting the same, their heirs, successors, and their invitees and licensees in the same manner as the parties receiving the same, their heirs, successors, or assigns and their invitees and licensees.
(Emphasis supplied). Appellants claim that according to this paragraph, the property owners granting easement rights to the Wests have the right to use the easement across the Wests' property "in the same manner" as the Wests. Since the Wests, as the easternmost property owners, have easement rights over the entire easement area, appellants assert that each property owner granting an access easement has similar *908 rights over the entire area and may use those rights in the same manner.
Appellants' construction is certainly reasonable and consonant with the intent of the owners in 1981 to make Southeast Fourth Street a private street for the benefit of all of the adjacent property owners. Under the Wests' construction, while the Wests would have the right to use the entire length of the street unimpeded, their neighbors to the west would have no such reciprocal right. In this case, an ambiguity results from the apparent contradiction between the specific grant of easement by the Wests' predecessor and paragraph eight of the declaration which can be read to grant reciprocal rights to all neighbors.
Where words creating an easement are ambiguous, a trial court may consider extrinsic evidence to ascertain the true intent of the parties. As stated by this court in Gelfand v. Mortgage Investors, 453 So.2d 897, 898-99 (Fla. 4th DCA 1984):
In determining the scope of the easement, the court may, if it concludes the words of the instrument ... ambiguous, resort to extraneous matters to arrive at the probable intent of the parties. Thus, the purpose of the easement, the location of the realty, the situation of the parties, and all surrounding circumstances may be considered.
Once an ambiguity exists within the document, "the proper construction of the grant must be arrived at by looking at what the original parties intended, as well as their successors in title as manifested by both the circumstances, and the actions and statements of the people involved." Diefenderfer v. Forest Park Springs, 599 So.2d 1309, 1312 (Fla. 5th DCA), review denied, 613 So.2d 4 (Fla.1992).
Because an ambiguity exists, the trial court should have permitted extrinsic evidence such as the minutes of the City Commission meeting regarding the parties' intent in creating the access easements. If reciprocal rights exist, then all appellants have standing to assert a violation of the access easement. We specifically do not decide whether appellants, other than the Kagans, have standing to enforce the access easement, nor do we express any opinion on whether laches may serve as a bar to appellants' attempt to seek an injunction, as it did the Kagans' attempt.
We next address the trial court's conclusion that all appellants lacked standing to seek relief for violations of the City building code. A private citizen may seek redress for a violation of a municipal ordinance where he or she proves special damages differing in kind from the damages suffered by the community as a whole. See Renard v. Dade County, 261 So.2d 832 (Fla.1972); Boucher v. Novotny, 102 So.2d 132 (Fla.1958); Carroll v. City of W. Palm Beach, 276 So.2d 491 (Fla. 4th DCA 1973). In explaining the "special damages" exception, our supreme court stated:
An aggrieved or adversely affected person having standing to sue is a person who has a legally recognizable interest which is or will be affected by the action of the zoning authority in question. The interest may be one shared in common with a number of other members of the community as where an entire neighborhood is affected, but not every resident and property owner of a municipality can, as a general rule, claim such an interest. An individual having standing must have a definite interest exceeding the general interest in community good shared in common with all citizens.
261 So.2d at 837.
Here, we find that appellants, who share the private road with the Wests, have alleged and proven special damages, different from those suffered by the community as a whole. Accordingly, we conclude that the trial court erred in holding that appellants lacked standing to enforce the building code. We do not pass on the merits of any defenses, including whether appellants will be barred by virtue of the doctrine of laches on this aspect of their claim.
The Kagans have also appealed the trial court's finding that their claim for injunctive relief, based upon the access easement, was barred by laches and all appellants appeal the finding that the City was equitably estopped *909 from revoking the building permits as was attempted in a cross-claim filed by the City against the Wests for declaratory relief. We affirm the trial court's determinations on these factual issues because they are supported by substantial competent evidence.
Although the trial court denied the Kagans' request for injunctive relief, the trial court determined that the construction of the cabana did violate the access easement granted to the Kagans. On cross-appeal, the Wests challenge this determination. We affirm because the trial court properly interpreted the grant of easement in concluding that the whole area of the access easement was set aside for ingress and egress. See Diefenderfer; Hoff v. Scott, 453 So.2d 224 (Fla. 5th DCA 1984). As stated in Hoff, "[c]onsiderations about what may be reasonably necessary for the dominant tenement owner's use or needs is not appropriate or relevant in this case." 453 So.2d at 225.
Whether a violation exists is not circumscribed by what portion of the area is actually being used or what is in fact needed. Diefenderfer; Hoff. Therefore, any permanent obstruction on any part of the easement area is prohibited by the terms of the easement. See Diefenderfer, 599 So.2d at 1313. It is undisputed that the cabana encroaches in part on the access easement. We thus affirm the trial court's conclusion that the construction of the Wests' cabana was in violation of the access easement.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
KLEIN, J., and GENDEN, MICHAEL A., Associate Judge, concur.