NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED


IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


C. HAYWARD CHAPMAN and            )
JACQUELINE CHAPMAN,               )
                                  )
        Appellants,               )
                                  )
v.                                )        Case No. 2D16-5263
                                  )
TOWN OF REDINGTON BEACH,          )
FLORIDA and DOUGLAS BACKMAN,      )
                                  )
        Appellees.                )
_____   )

Opinion filed October 25, 2019.

Appeal from the Circuit Court for Pinellas
County; Thomas H. Minkoff, Judge.

Marie Tomassi and Eric S. Koenig of
Trenam, Kemker, Scharf, Barkin, Frye,
O'Neill & Mullis, P.A., Tampa, for
Appellants.

Jay Daigneault and Randy Mora of Trask
Daigneault, LLP, Clearwater, for Appellee
Town of Redington Beach.

Richard E. Fee, Kathleen M. Wade, Jillian
L. Feltham, and Catherine F. Yant of
Fee & Jeffries, P.A., Tampa, for Appellee
Douglas Backman.

SALARIO, Judge.

C. Hayward Chapman and Jacqueline Chapman sued the Town of Redington Beach and their neighbor, Douglas Backman, over a series of improvements Mr. Backman made to his property that the Chapmans say violated the Town's zoning ordinances. The trial court rendered separate final summary judgments in favor of the Town and Mr. Backman. We affirm the judgment in favor of the Town without comment. But because Mr. Backman failed to show that he was entitled to summary judgment on the theory the Chapmans have not suffered special damages to support their standing to enforce the Town's zoning ordinances, we reverse the judgment in favor of Mr. Backman and remand for further proceedings.

I.

The Chapmans and Mr. Backman own neighboring beachfront properties. On January 18, 2016, the Chapmans filed a second amended complaint against the Town and Mr. Backman in which they describe numerous modifications that Mr. Backman has made to his property and allege that each violates a Town zoning ordinance. It also alleges that the Chapmans have suffered special damages because their property is "materially less safe and materially less valuable due to these violations." The complaint asks for declaratory judgment that the improvements violate Town ordinances and seeks supplemental and injunctive relief, including the removal of the improvements. See §§ 86.021, .061, Fla. Stat. (2015). As relevant here, the complaint identifies three violations for which the Chapmans seek relief; the complaint calls them the "accessory structure," the "safety sight triangle," and the "hedge."

The accessory structure is a former workshop which Mr. Backman has partially renovated. According to the Chapmans, Mr. Backman got a permit to add a second story to the structure, but the permit was wrongfully issued because the value of the renovations exceeded fifty percent of the original value of the structure. The complaint also alleges that the permitted renovations have been abandoned because Mr. Backman has ceased constructing them.

The safety sight triangle refers to what the complaint alleges to be a hazardous traffic situation caused by Mr. Backman's construction of a wall along the roadway to which the Chapmans' driveway connects. According to the Chapmans, this wall blocks the view of oncoming traffic from the Chapmans' driveway, thus making it dangerous to exit the driveway and posing a danger both to the Chapmans and to others driving, riding, or walking on the road. The Chapmans also allege that this wall was improperly constructed, as it exceeds the height limit imposed by Town ordinance.

The hedge is a growth of vegetation along the ocean-facing side of Mr. Backman's property. The complaint alleges that it violates a Town ordinance because it is too tall and violates their littoral rights because it obstructs their view of the ocean. It also asserts that the obstructed view negatively affects the Chapmans' property value.

Both defendants moved for summary judgment. The Town argued that it was not a proper party to the suit because (1) the Chapmans were not seeking the validation or construction of an ordinance and (2) a court decree compelling the Town to enforce its zoning ordinances would violate the doctrine of separation of powers. The trial court agreed with the separation of powers argument and granted summary

judgment to the Town. Based on the arguments presented in this appeal, we find no error in that determination and affirm the summary judgment in favor of the Town.

Mr. Backman's motion for summary judgment argued that the Chapmans lacked standing to enforce the Town's zoning ordinances because they had not suffered special damages—a peculiar injury that differed in the type of harm, rather than merely the degree of harm, suffered by the community as a whole as a result of the ordinance violation. He asserted that (1) the Chapmans failed to allege any damages stemming from the accessory structure and thus failed to allege the peculiar injury required for standing; (2) by alleging that the safety sight triangle was a hazard to others in the community, the Chapmans failed to allege that the safety sight triangle caused any injury that was peculiar to them; and (3) the hedge did not violate the Chapmans' littoral rights because the Chapmans' property is not littoral property and the Chapmans are not entitled to an unobstructed view. Mr. Backman also raised an argument that he did not violate the ordinance provisions regulating hedge height because the vegetation blocking the Chapmans' view is not a hedge within the meaning of that ordinance.

The Chapmans filed a memorandum that described how the accessory structure, the safety sight triangle, and the hedge caused them peculiar injury by reducing the value of their property and, with respect to the safety sight triangle, creating a dangerous condition. The Chapmans also submitted an affidavit by Ms. Chapman explaining how the improvements have diminished the Chapmans' property value and an expert report describing the danger of the safety sight triangle.

The trial court granted summary judgment to Mr. Backman, reasoning that the Chapmans could not show special damages. Its order followed Mr. Backman's

reasoning as to the accessory structure and the safety sight triangle. As to the hedge, the trial court reasoned that the Chapmans could not prove special damages because Ms. Chapman testified in a deposition that she did not know whether her property value changed after Mr. Backman began his improvements on his home next door. The trial court did not address Mr. Backman's arguments about whether the Chapmans enjoyed littoral rights or whether the hedge is really a hedge.[1]

## II.

We review an order granting summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper when "the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(c). The initial burden rests on the movant, who must prove that no genuine issue of material fact exists. Estate of Githens ex rel. Seaman v. Bon Secours–Maria Manor Nursing Care Ctr., Inc., 928 So. 2d 1272, 1274 (Fla. 2d DCA 2006). This proof must be affirmative and based in proper summary judgment evidence; the movant cannot merely say that the other side lacks evidence to support its case. Fields v. Devereux Found., Inc., 244 So. 3d 1193, 1195 (Fla. 2d DCA 2018); see also Fla. R. Civ. P. 1.510(c). If the movant satisfies this burden, the burden shifts to the nonmovant to prove that a genuine issue

---

[1]Mr. Backman has not raised these arguments as tipsy-coachman bases for a partial affirmance, and we leave it to the trial court to determine the undisputed facts and address the legal arguments, if necessary, in the first instance on remand. See, e.g., HSBC Bank USA, Nat'l Ass'n v. Nelson, 246 So. 3d 486, 489 (Fla. 2d DCA 2018).

of material fact remains to be tried.  First N. Am. Nat'l Bank v. Hummel, 825 So. 2d 502, 503 (Fla. 2d DCA 2002).

## A.

The trial court granted Mr. Backman's motion for summary judgment on the theory that the Chapmans lack standing to enforce the Town's zoning ordinances.[2] A private citizen has standing to enforce a valid municipal zoning ordinance only when special damages are alleged and proven.  Skaggs-Albertson's v. ABC Liquors, Inc., 363 So. 2d 1082, 1086 (Fla. 1978).  In this context, special damages are any injury "peculiar to [the plaintiff] differing in kind as distinguished from damages differing in degree suffered by the community as a whole."  Boucher v. Novotny, 102 So. 2d 132, 135 (Fla. 1958); see also City of Ft. Myers v. Splitt, 988 So. 2d 28, 31 (Fla. 2d DCA 2008).  The rule serves to limit the avalanche of litigation that might otherwise result from any alleged zoning violation; one need not have a surfeit of imagination to picture the results if every member of a community bothered by a single zoning violation was authorized to bring the same suit against the same defendant alleging the same general type of harm.[3]  See Skaggs-Albertson's, 363 So. 2d at 1088; see also U.S. Steel Corp. v. Save Sand Key, Inc., 303 So. 2d 9, 12 (Fla 1974) (quoting Askew v. Hold the Bulkhead-Save

---

[2]The Chapmans have not disputed that the special damages rule applies to their claim for a declaratory judgment.  But see Detournay v. City of Coral Gables, 127 So. 3d 869, 877 (Fla. 3d DCA 2013) (Lagoa, J., dissenting) (expressing the view that "the Declaratory Judgment Act does not require that a special injury be established").

[3]The rule also has doctrinal moorings in the common law governing nuisance—a historical antecedent to modern zoning law—under which a private plaintiff could not maintain an action for a public nuisance unless he or she had suffered special damages.  Skaggs-Albertsons, 363 So. 2d at 1088.

Our Bays, Inc., 269 So. 2d 696, 697 (Fla. 2d DCA 1972)).  Thus, plaintiffs in these types of cases are required to plead and prove what amounts to a harm peculiar to themselves.

Application of the special damages rule can get tricky when a plaintiff alleges that the defendant's actions have harmed both the plaintiff and others in the community.  This issue arose in Boucher, the supreme court decision from which the special damages rule in Florida originates.  102 So. 2d 132.  In Boucher, the court reasoned that even though the plaintiffs' allegation that their property value had been diminished described an injury unique enough to show special damage, the "strength of the allegation [was] destroyed" because the plaintiffs also alleged that the whole community also suffered some property value depreciation.  Id. at 136.  That reasoning would tend to suggest that a plaintiff's allegation of harm would doom the plaintiff's standing to bring a suit for violations of a zoning ordinance where that harm is alleged to be in the same general category of damage as others in the community.

A decade and a half after Boucher, the supreme court decided Renard v. Dade County, 261 So. 2d 832, 837-38 (Fla. 1972), in which it recognized that "changed conditions, including increased population growth and density, require a more lenient application of" the special damages rule than Boucher contemplated.  See also Skaggs-Albertsons, 363 So. 2d at 1088 (explaining that the special damages rule "has acquired a more liberal application"); Albright v. Hensley, 492 So. 2d 852, 855 (Fla. 5th DCA 1986) (explaining that "the courts have reduced what was [formerly] required to establish special damages").  The court explained that under this more lenient application of the rule, "[t]he facts of the Boucher case . . . would probably be sufficient

to show special damage." 261 So. 2d at 838. That would tend to suggest that the mere fact that others in the community suffered, at some level of generality, the same kind of harm as the plaintiff—which was the case in Boucher—would not necessarily doom the plaintiff's standing. In the end, though, neither Renard nor the other applicable precedents are clear on how a "more lenient application" of the special damages rule should resolve any particular case. See Renard, 261 So. 2d at 838.

But on facts not too far off from those here—involving claims by an adjacent landowner alleging a zoning violation—the Fourth District held that a plaintiff's allegations of injury were sufficient to demonstrate standing. In Carroll v. City of West Palm Beach, 276 So. 2d 491, 492 (Fla. 4th DCA 1973), the plaintiff alleged that the defendant installed high-voltage power lines on property adjacent to his in violation of a zoning ordinance. His complaint alleged that the lines "were hazardous, dangerous, unsightly, and entirely out of character with the residential district," that they "severely impaired the . . . character and value of the land area, including plaintiff's property," and that they constituted a nuisance to the public generally and harmed the plaintiff by reducing the usability, value, and salability of his property. Id.

Although the complaint alleged harm to the "land area" and the "public generally"—and thus implied that members of the community generally suffered similar kinds of harm—the court reversed a trial court order dismissing the complaint on basis that the plaintiff lacked standing. Id. at 492-93. It held that the plaintiff's allegations that he was an adjoining landowner who suffered harm to the value and salability of his property were sufficient to distinguish the case from Boucher, which involved a plaintiff whose property was "sufficiently removed from the area in which the alleged zoning

violation was occurring that . . . the court could hold as a matter of law that the plaintiff's damages were no different in kind from that of other property owners in the general area." 276 So. 2d at 493. As authority, the court relied on the supreme court's decisions in Renard, 261 So. 2d at 835, and Conrad v. Jackson, 107 So. 2d 369, 371 (Fla. 1958), both of which involved claims under zoning ordinances brought by adjacent landowners who were held to have standing.

Other decisions have likewise recognized that an adjoining or nearby landowner may be more likely to suffer special damages as a result of a zoning ordinance violation than other members of the community at-large. For example, in Skaggs-Albertsons, the supreme court held that a grocery and liquor store in the same shopping plaza as another liquor store had standing to contest a zoning violation involving the competitor store. 363 So. 2d at 1090. The court reasoned that although loss of business would ordinarily not qualify as special damage, the proximity of the stores to one another, combined with impediments to relocation imposed on liquor stores by regulation, gave rise to an injury that was peculiar to the nearby plaintiff. Id.

In a factual context closer to this case, the Fourth District in Kagan v. West, 677 So. 2d 905, 906, 908 (Fla. 4th DCA 1996), held that one of several landowners who shared a private road had standing to sue neighbors who built a two-story cabana in violation of local setback and height restrictions because they, by virtue of sharing the private road, suffered "special damages, different from those suffered by the community as a whole." Id. at 908. And in State ex rel. Gardner v. Sailboat Key, Inc., 306 So. 2d 616, 617-18 (Fla. 3d DCA 1974), the Third District held that an adjacent landowner had standing to challenge zoning violations that would result in a significant

elevation of the adjacent land, obstructing the plaintiff's view and increasing the risk of flooding. The court held that, "in light of the liberal construction of . . . standing . . . as pronounced . . . in Renard," the plaintiff had alleged a special injury. Id. at 618.

What emerges from these cases—and we think it correct—is a recognition that an owner of property which is adjacent to or nearby land upon which there is a zoning ordinance violation may, by virtue of proximity, be peculiarly affected by the violation, even if his or her injuries might at some level of generality be described as similar to those of other community members. As a thought experiment, imagine a small community of homes arrayed in a W-shape facing the water with two lots at the top-center of the W and the water beyond it. Now imagine that the owner of a lot at the top-center of the W closest to the water builds a house much higher and wider than the community's zoning ordinances allow. All members of this community might have their water views impaired—wherever they are, some part of the new house will likely block some of their views—but the owner of the lot directly behind the new house will by virtue of the magnitude of the new construction have his or her water view totally occluded.

Applying a lenient construction of the special damages rule, opinions like Carroll, Kagan, and Gardner would correctly regard the owner of the lot behind the house as having standing to enforce the zoning ordinance against the offending landowner. Why? Because although there might be some similarity about the injuries suffered by all community members (impairment of a view), only the landowner immediately behind the new house has had his view blocked entirely. The difference is so significant as to make any similarity to the injury suffered by other landowners

immaterial; it amounts to a difference in kind, and it is directly related to proximity and position with regard to the land on which the zoning violation occurred.

## B.

In the main, Mr. Backman's summary judgment argument—which the trial court accepted—is that the Chapmans' complaint fails to make legally sufficient allegations under the special damages rule. He is, of course, correct that a plaintiff suing to enforce a zoning ordinance must plead special damages. See Skaggs-Albertson's, 363 So. 2d at 1086; Boucher, 102 So. 2d at 135. But the appropriate way to make that argument is in a motion to dismiss under rule 1.140(b)(6). See, e.g., HSBC Bank USA, Nat'l Ass'n v. Nelson, 246 So. 3d 486, 489 (Fla. 2d DCA 2018). We need not dwell on the procedural ramifications here, however, because the Chapmans' complaint meets the standard of legal sufficiency. Taking as true "all material facts well-pleaded and all reasonable inferences arising from those facts" in their favor, the Chapmans have alleged sufficient "ultimate facts" to show that they are entitled to relief under the special damages rule. Perry v. Cosgrove, 464 So. 2d 664, 665 (Fla. 2d DCA 1985); see also Atha v. Allen P. Van Overbeke, D.M.D., P.A., 213 So. 3d 1073, 1074 (Fla. 2d DCA 2017) (stating standard for judging sufficiency of a complaint).

The second amended complaint sufficiently alleges a theory that the Chapmans have suffered special damages in the form of a diminution in their property value and a reduction in their safety as a consequence of Mr. Backman's alleged zoning violations. It asserts that the Chapmans own the property adjacent to Mr. Backman's property and that the property on the other three sides is public land. It alleges that Mr. Backman began a second-story addition to the accessory structure, constructed a wall

- 11 -

that created a "hazardous traffic situation for the [Chapmans]," and erected a hedge in lieu of another wall that obstructed the Chapmans' water views, thereby reducing their property's value. It says that all of Mr. Backman's actions on the property are part of his publicly stated "goal of building a secured compound with high walls and privacy even though this particular site has . . . strict Gulf front visibility protections, setbacks, and height restriction." And it ultimately alleges that all of Mr. Backman's alleged zoning violations have caused the Chapmans "adjacent property [to be] specially damaged because it is materially less safe and materially less valuable due to these violations."

These are not, as the trial court concluded and Mr. Backman urges here, merely "bald allegation[s]" of special damages. Boucher, 102 So. 2d at 136. They are instead articulable, ultimate facts that set forth a theory of special damage that makes legal sense under the precedents we have discussed above—namely, that the Chapmans as adjoining landowners are uniquely injured by Mr. Backman's alleged zoning violations because those violations uniquely diminish the value of the property and uniquely affect their safety. The facts they have alleged sufficiently distinguish the harms they have suffered from any harms suffered by the community at-large. Whether the evidence will bear the Chapmans' pleaded theories of special damages out with respect to each of the zoning ordinance violations the Chapmans allege is, no doubt, an open question. But the Chapmans have alleged special damages "with sufficient clearness to enable the court to determine whether [they are] entitled to maintain the suit."[4] Boucher, 102 So. 2d at 136; see also Carroll, 276 So. 2d at 493.

_____

[4]This conclusion is a closer call with respect to the allegations about the accessory structure than it is with respect to the safety sight triangle and the hedge, but the allegations concerning the structure, the Chapmans' position as adjoining

- 12 -

The trial court went further with respect to the Chapmans' allegations about the safety sight triangle, relying on Boucher to conclude that the Chapmans' allegation that the condition created by the wall presents an "ongoing hazard to neighbors, cyclists, and others" doomed their allegation of a safety-related injury that is peculiar to them because it was effectively a concession that others in the community suffered safety-related harms. As we have explained, however, the supreme court's subsequent decision in Renard clarifies that under the "more lenient application" of the special damages rule it announced, the facts of Boucher, which also involved allegations that others suffered harms generally similar to those suffered by the plaintiff, would likely be sufficient to show special damage. And cases like Carroll and Kagan show that the mere fact that a zoning ordinance violation may cause some harm to the community at-large does not preclude an adjoining or nearby landowner from showing a special injury to himself or herself.

That is the case here. The alleged hazard to the Chapmans is a wall that blocks visibility of the road from the Chapmans' driveway. Ordinary members of the community can pass by the hazard without risk—so long as someone is not leaving the Chapmans' driveway at that moment—but it is the Chapmans alone who must suffer the danger of impaired visibility every time they turn into traffic when leaving their house. Based on the Chapmans' allegations, it appears true that people passing by the Chapmans' home are at risk as well. But like the adjoining property owner in our thought experiment, the quality of the Chapmans' alleged experience as adjoining

landowners, Mr. Backman's stated purpose in undertaking the improvements, and the valuation of the Chapmans' property, we think, are sufficient to plead that the accessory structure specially damaged the Chapmans' property by making it less valuable.

- 13 -

property owners is so different from the occasional and incidental risk incurred by the community at-large as to amount to a difference in kind. The Chapmans have thus sufficiently alleged special damages as to the safety sight triangle.

Having resolved the legal sufficiency of the Chapmans' allegations of special damages, it remains only to explain that Mr. Backman's evidentiary case for summary judgment is far too thin to support the trial court's order. As for the accessory structure, Mr. Backman provided no evidence to show that the Chapmans had not suffered a diminution in the value of their property on account of partially constructing a second floor on the structure. All he did was point to an absence of evidence on the Chapmans' side. As we have long held, that kind of showing is not enough to carry a movant's initial burden on summary judgment. See Fields, 244 So. 3d at 1195; Derogatis v. Fawcett Mem'l Hosp., 892 So. 2d 1079, 1083 (Fla. 2d DCA 2004); Matarese v. Leesburg Elks Club, 171 So. 2d 606, 607 (Fla. 2d DCA 1965).

As concerns the safety sight triangle, Mr. Backman relied on Ms. Chapman's admission that no one yet has gotten into an accident exiting the Chapmans' driveway. Assuming that this was sufficient to meet Mr. Backman's initial summary judgment burden to show that there was no safety-related risk, the Chapmans submitted contrary evidence to show a fact issue about special damages. They provided both an engineer's report concluding that "significant visibility limitations . . . have created an unsafe exiting environment for drivers exiting the subject property" and an affidavit from Ms. Chapman stating that the situation would require her to make disclosures to prospective buyers, which makes the property more difficult to sell and results in reduced value. (Ms. Chapman has held a real estate broker's license since

1986, a real estate sales license since 1974, and claims to have personal knowledge with selling Gulf-front property like the Chapmans'. The admissibility of this testimony has not been put in dispute.) Thus, the Chapmans showed that there is a fact issue as to whether Mr. Backman's wall created special damages both in the form of diminished safety and in the form of diminished value.

That brings us to the hedge. The trial court granted summary judgment on this theory because Ms. Chapman testified at deposition that she did not know whether or not her property's value had changed after Mr. Backman began his renovations, which it said further highlighted the inadequacy of the Chapmans' allegations of special damages. There are three problems here. First, Ms. Chapman's testimony is not evidence that the value of the Chapmans' property had not in fact changed; it is at best a suggestion that Ms. Chapman did not have evidence of any change. Again, merely pointing to an absence of evidence to support the opposing party's case is not sufficient to carry a party's initial summary judgment burden.

Second, the trial court's order does not accurately describe Ms. Chapman's deposition testimony. She was not asked whether the value of her property had "changed" since Mr. Backman began work; she was asked whether it was true that the value of her property had "increased" since then. She answered "I don't know that." At most, this is an acknowledgement by Ms. Chapman that it is possible the value of her property increased, but that is a far cry from actual evidence that the value of the property in fact increased. And it is an increase in fact that would (arguably) help Mr. Backman establish the nonexistence of a fact issue about whether the value of the

Chapmans' property was diminished after the alleged zoning ordinance violations. So Mr. Backman's initial burden is not satisfied by Ms. Chapman's actual testimony either.

Third, even if Ms. Chapman's testimony met Mr. Backman's initial burden on the question of diminished value, the Chapmans established a fact dispute. Ms. Chapman's affidavit described the expectations of buyers of Gulf lots and opined that the obstruction of their view would reduce their property's value by hundreds of thousands of dollars. (Again, the admissibility of this testimony is not disputed). This is not inconsistent with her deposition testimony such that it foreclosed the existence of a genuine issue of material fact. Cf. Slominski v. Citizens Prop. Ins. Corp., 99 So. 3d 973, 977-78 (Fla. 4th DCA 2012) (concluding that plaintiffs opposing summary judgment were not entitled to rely on depositions which could not be given "any reasonable meaning which will not conflict with the subsequently filed affidavit"). It is entirely possible for the value of her property to have increased due to market conditions and still to have been diminished (not have increased as much) by virtue of an obstructed view. Cf. 4 Corners Ins., Inc. v. Sun Publ'ns of Fla., Inc., 5 So. 3d 780, 783-84 (Fla. 2d DCA 2009) (finding fact dispute as to lost profits where evidence showed that revenues should have increased more than they in fact did). It is sufficient to show the existence of a genuine dispute on the question of diminished value.

III.

In sum, the allegations of special damages in the Chapmans' complaint are legally sufficient under the decisional law on the special damages rule. Mr. Backman is not otherwise entitled to summary judgment on the theory that the evidence shows no dispute as to whether the Chapmans have suffered special damages. We

- 16 -

affirm the final summary judgment in favor of the Town, reverse the final summary judgment in favor of Mr. Backman, and remand the case to the trial court for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded.

KELLY and LUCAS, JJ., Concur.