PER CURIAM.
Highlands Insurance Company (Highlands) appeals the lower court’s Final Judgment entered in favor of Morris Kravecas (Kravecas)(plaintiff below).
In April 1992, Highlands issued a homeowners’ dwelling policy to George and Bran-dee Sax (collectively, Sax), who are not parties to the action below. Sax’s residence in Miami Beach was damaged by Hurricane Andrew. Sax made a claim against the policy’s dwelling coverage, and Highlands paid Sax’s claim of $22,721.41. Sax made no claim for additional living expenses and/or fair rental value as he was never forced to move out of the house.
Six months after Hurricane Andrew, Kravecas purchased the property from Sax. In March 1993, Kravecas secured an assignment of the Sax’s “right, title and interest” in the subject insurance policy, believing that the property may have suffered additional hurricane damage. Kravecas retained a public adjuster who contacted Highlands about re-opening the Hurricane Andrew claim and requested an appraisal. Kravecas’ adjuster outlined another $206,545.51 in structural repairs required as a result of Hurricane Andrew.
In November 1993, Kravecas sued Highlands for breach of contract, to compel appraisal under the policy, and for declaratory judgment. In its answer, Highlands affirmatively alleged that the assignment was invalid because Highland’s written consent was not obtained and that the original insured had resolved his claim with Highlands for a satisfactory amount. Kravecas replied by asserting that Florida law only prohibits the assignment of policies, not claims, and that the original claim was not satisfied but was only partially paid.
The case was set for jury trial. Kravecas filed a motion for partial summary judgment on Highland’s affirmative defenses relating to the validity of the assignment. The motion made no reference to any claim other than the claim for hurricane damage to the residence purchased by Kravecas. The trial court granted the motion, but reserved ruling on whether Kravecas was considered a “named insured” under the policy. On the eve of trial, the trial court entered an Agreed Order to Stay Proceedings, pending completion of the appraisal process. Counsel for *321 the parties disagreed over whether damages for additional living expenses (ALE) and/or fair rental value were included in Kravecas’ claim. .
After the appraisal hearing, an award was entered in October 1995 for $240,542.02 for “building damages/dwelling” and $115,189.16 for “additional living expenses/fair rental value minus deductible.” The trial court entered its order confirming the arbitration award and entered final judgment for Krave-eas.
Highlands filed a motion to vacate the appraisal award. Regarding the ALE/fair rental award, Highlands argued that the appraisers improperly considered additional living expenses for which Kravecas had never made a claim prior to the appraisal process and that the appraisers had exceeded their authority in awarding such damages. The trial court denied Highlands’ motion to vacate the arbitration award based upon the allegation that the appraisers exceeded their authority regarding the ALE claim. However, the trial court agreed with Highlands that its appraiser did not have sufficient notice of one of the conferences among the appraisers to consider the evidence presented, thus the trial court ordered a rehearing of the issues before the same panel.
A second appraisal award was entered on June 13, 1996, awarding damages for “building damages/dwelling” for $240,542.02 and awarding damages for “additional living expenses less deductible” for $95,189.16. Highlands moved to vacate this award, again challenging the ALE award. The trial court denied Highlands’ motion and entered final judgment for Kravecas. This appeal followed.
Section 627.422, Florida Statutes (1991), provides that an insurance policy may or may not be assignable “as provided by its terms.” The policy at issue here contained a clause specifically forbidding assignment of the policy absent the insurer’s written consent. It is undisputed that Highlands never gave written consent to any assignment under the present policy. Accordingly, Kravecas’ entitlement to recover ALE benefits depends on whether Sax, the named insured, properly assigned a claim for additional living expenses to him.[1] See Gisela Invs., N.V. v. Liberty Mut. Ins. Co., 452 So.2d 1056 (Fla. 3d DCA 1984)(“A provision in a policy of insurance which prohibits assignment thereof except with the consent of the insurer does not apply to prevent assignment of the claim or interest in the insurance money then due, after loss”).
The “Quit Claim Assignment of Insurance Policy and Proceeds” executed by Sax assigns his claim for the loss he suffered as a result of Plurricane Andrew. The record in this case is clear that the only claim Sax had was for structural damage to his home. Sax received an initial payment of $22,721.41 from Highlands and, in essence, assigned the right to Kravecas to make any supplemental claim which may be needed. Kravecas’ supplemental claim for “building damages/dwelling” has been appraised at $240,542.02 and Highlands agrees that it must pay this amount.
The purpose of the “loss of use” coverage is to compensate the homeowner where a covered loss, in this case Hurricane Andrew, “makes that part of the residence premises where you reside not fit to live in.'...”[2] The “you” in this case is Sax, the home *322 owner. There is no showing that Sax, the homeowner, experienced any loss of use during the period of ownership. Because Sax had no unreimbursed loss of use, there was no claim under the “loss of use” coverage. That being so, the buyer, Kravecas, did not receive any “loss of use” claim by reason of Sax’s assignment.
Stated differently, the purpose of the “loss of use” coverage is to make whole a displaced homeowner. Kravecas is a third-party buyer, who purchased the hurricane-damaged premises after the fact. He is attempting to assert his own claim for loss of potential use, instead of asserting Sax’s claim for actual loss of use. As we view the matter, it would create an unwarranted windfall if the third-party buyer, Kravecas, could assert his own claim for loss of use, even though he had never been resident on the premises.[3]
We reverse the final judgment entered by the trial court in favor of Kravecas and remand with instructions to strike the ALE award.

. Highlands does not challenge the property damage award.

. The “loss of use" coverage states:
COVERAGE D — Loss Of Use
The limit of liability for Coverage D is the total limit for all the coverages that follow.
1. If a loss covered under this Section makes that part of the residence premises where you reside not fit to live in, we cover, at your choice, either of the following. However, if the residence premises is not your principal place of residence, we will not provide the option under paragraph b. below. a. Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or
b. Fair Rental Value, meaning the fair rental value of that part of the residence premises where you reside less any expenses that do not continue while the premises is not fit to live in.
Payment under a. or b. will be for the shortest time required to repair or replace the damage or if you permanently relocate, the shortest time required for your household to settle elsewhere.

. We note that if the premises had been rendered uninhabitable during Sax's residency, and Sax permanently relocated, the policy provides that "[playment ... will be for the shortest time required to repair or replace the damage if you permanently relocate, the shortest time required for your household to settle elsewhere." (Emphasis added). Under this part of the policy, if the insured homeowner decides to sell and relocate, then the homeowner’s claim for loss of use is limited to the shortest time required for the homeowner’s household to settle elsewhere.