PER CURIAM.
In this appeal, appellant-homeowners, Edward and Joyce Slominski, challenge *975 the trial court’s final summary judgment entered in favor of appellee, Citizens Property Insurance Corporation, on their claim for hurricane damage from Hurricane Wilma. We affirm.
Hurricane Wilma impacted Palm Beach County on October 24, 2005, at which time the Slominskis had an insurance policy with Citizens. After the storm, the Slom-inskis made minimal repairs, costing approximately $1,500, well under their policy’s $12,860 deductible.
Three and a half years later, the Slom-inskis filed a claim with Citizens based on wind and water damage to their, home caused by Wilma. They waited to file a claim, because they originally believed the damage sustained fell below the policy’s deductible. Citizens then investigated and made a final determination that “the damages reported cannot be attributed to Hurricane Wilma due to the amount of time that has transpired since the purported date of loss to the present date.” Citizens also cited the Slominskis’ failure to comply with post-loss duties, a condition precedent to reimbursement of a claim, pursuant to the policy. The contractual post-loss duties required the Slominskis, in a case of loss to their property, to “[g]ive prompt notice to [Citizens].”
Following the denial, the Slominskis filed suit, to which Citizens answered with affirmative defenses, several of which touched on the Slominskis’ failure to give prompt notice to Citizens. The Slominskis replied, denying and avoiding the affirmative defenses. Citizens filed a motion for summary judgment alleging that the Slom-inskis “breached the post loss policy conditions by failing to promptly notify Citizens of the loss which in turn would have allowed Citizens to timely investigate this matter within a reasonable time frame after the loss,” thus prejudicing Citizens and relieving Citizens of its duty to provide coverage for the loss. Citizens alleged that the Slominskis failed to overcome this prejudice. Following a hearing, the trial court granted the motion for summary judgment. This appeal followed.
In support of the motion and response, the parties filed depositions and affidavits of various witnesses, including the contractor whom the Slominskis engaged to construct an addition to their home in January 2009 and the engineer who inspected their home, also in January 2009. The depositions were taken prior to the affidavits, which are dated August 2010.
In his deposition, the contractor concluded that the wind damage would not have occurred “without hurricane-force[ ] winds,” but admitted that he could not be “100% sure” that the wind damage was caused by Hurricane Wilma, as opposed to Hurricane Frances in 2004. On the other hand, he testified that the direction from which the respective storms hit varied, which formed the basis for his opinion. He admitted that, with regard to water damage, there was “no way to differentiate” one storm from another. However, in his affidavit, the contractor stated: “Based on. my expertise and personal knowledge of the Slominski home, I am able to determine that the damages as alleged in the lawsuit against Citizens occurred to the property as a result of Hurricane Wilma.”
Meanwhile, in deposition testimony, the engineer admitted that he was unable to determine exactly when the interior staining or roof damage occurred, but opined only that it was caused by a hurricane. He admitted that his conclusions about the wind-driven rain were based on a consideration of “facts presented by the homeowner.” In his affidavit, in contrast, the engineer opined: “Based on my expertise I am able to determine that the damages to the roof, door, and window displacement as well as interior damage of the Slominski *976 home were due to the vibration, wind driven rains, and high winds to the structure during Hurricane Wilma.” The engineer also gave the opinion that Citizens suffered no prejudice due to the delay, “as the determination would have been the same as to the causation of the damage if I were to inspect this property immediately after the hurricane or the years after as I did.”
On appeal, the Slominskis argue that the affidavits of the contractor and engineer give rise to genuine issues of material fact, precluding summary judgment. “Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law.” Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000) (citing Menendez v. Palms West Condo. Ass’n, 736 So.2d 58 (Fla. 1st DCA 1999)). When reviewing “a trial court’s ruling on summary judgment based upon the interpretation of an insurance contract ... our standard of review [is] de novo.” Chandler v. Geico Indem. Co., 78 So.3d 1293, 1296 (Fla.2011).
In delayed notice cases, “while prejudice to the insurer is presumed, if the insured can demonstrate that the insurer has not been prejudiced thereby, then the insurer will not be relieved of liability merely by a showing that notice was not given ‘as soon as practicable.’ ” Tiedtke v. Fid. & Cas. Co. of New York, 222 So.2d 206, 209 (Fla.1969) (quoting State Farm Mut. Auto. Ins. Co. v. Ranson, 121 So.2d 175 (Fla. 2d DCA 1960)). “[T]his does not mean that upon a showing of delay alone the insurer can avoid liability — it only means that the insurer will not have the burden of proving such prejudice.” Am. Fire & Cas. Co. v. Collura, 163 So.2d 784, 792-93 (Fla. 2d DCA 1964). “This burden shifting is consistent with the burden shifting which occurs on a motion for summary judgment when the movant has met the initial burden of demonstrating the nonexistence of any genuine issue of material fact.” Soronson v. State Farm Fla. Ins. Co., 96 So.3d 949 (Fla. 4th DCA 2012). The burden is “on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts.” Bankers Ins. Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985). “Before the trial court should grant summary judgment, the record on such a motion should ‘conclusively foreclose[ ]’ the insured’s ‘ability to overcome the presumption [of prejudice].’” Stark v. State Farm Fla. Ins. Co., 95 So.3d 285, 285 (Fla. 4th DCA 2012) (quoting Robinson v. Auto Owners Ins. Co., 718 So.2d 1283, 1285 (Fla. 2d DCA 1998)).
Recently in Stark, we faced a similar factual situation, but reversed the final summary judgment. There, the insureds reported their Hurricane Wilma claim to the insurer in March 2009, even though they were previously aware of and minimally repaired roof damage following the hurricane. As here, the insureds believed that the cost of repairing the damage would not exceed their policy’s deductible. After the insurer denied the claim on the basis that the investigator could find no damage directly attributable to Hurricane Wilma and that the insureds’ receipt for their post-storm roof repairs did not overcome the prejudice caused by the delay in reporting the claim, the insureds sued for breach of contract. The insurer filed a motion for summary judgment, and in opposition, the insureds filed affidavits of an engineer and the public adjuster. Both affidavits indicated that the damage to the insureds’ roof was caused by Hurricane Wilma. The trial court granted the motion for summary judgment, finding that the report of loss was untimely, and “therefore, it constitutes as presumed to be prejudice.” Id. at 287.
*977 This court reversed on grounds that “there remained a disputed issue of material fact as to whether the insurer was, in fact, prejudiced by the late notice from the insureds.” Id. at 288 (footnote omitted). First, we noted that the engineer’s “opinion that the insurer could still have observed the ‘classic pattern of windstorm damage’ left by Hurricane Wilma as late as 2010 suggested that the insureds could convince a finder of fact that their noncompliance with the notice provision did not prejudice the insurer by depriving it ‘of the opportunity to investigate the facts.’ ” Id. (footnote omitted) (quoting Macias, 475 So.2d at 1218). Further, the public adjuster’s statement that there was storm damage to the insureds’ roof also posed “an issue of material fact concerning the ability of the insureds to overcome the presumption of prejudice.” Id. (footnote omitted). Cf. Soronson, 96 So.3d at 953 (insureds failed to present sufficient evidence to raise genuine issue of fact, when their only evidence of lack of prejudice was “their own affidavit” and “unsworn copies of reports from the engineers who inspected the insureds’ roof’).
Here, in contrast, while the affidavits submitted by the Slominskis contained similar statements to those in the affidavits in Stark, there were also statements made by the affiants in deposition testimony, taken prior to the affidavits and contradicting the statements in the affidavits. “A party may not file his or her own affidavit, or that of another, baldly repudiating his or her own deposition testimony to avoid the entry of a summary judgment.” Ouellette v. Patel, 967 So.2d 1078, 1082 (Fla. 2d DCA 2007). The Ouellette court applied this rule to a non-party affidavit that allegedly contradicted that same non-party’s prior deposition. Id. at 1088. The court explained that “ ‘[a] party may file a subsequent affidavit for the purpose of explaining testimony given at a prior deposition, provided the explanation is credible and not inconsistent with the previous sworn testimony, even though it creates a jury issue on the opponent’s motion for summary judgment.’ ” Id. at 1082-83 (quoting Jordan v. State Farm Ins. Co., 515 So.2d 1317, 1319 (Fla. 2d DCA 1987)). However, the non-moving party is still “entitled to all reasonable inferences in his or her favor, [which] ‘includes giving to the previous deposition any reasonable meaning which will not conflict with the subsequently filed affidavit.’ ” Id. at 1083 (quoting Koflen v. Great Atl. & Pac. Tea Co., 177 So.2d 529, 531 (Fla. 3d DCA 1965)).
The statements made by both the contractor and the engineer in their prior depositions cannot be given “any reasonable meaning which will not conflict with the subsequently filed affidavit.” The contractor’s subsequent affidavit named Hurricane Wilma as the cause of damage to the Slominskis’ home; in deposition, however, he had attributed the damage to “hurricane-force[ ] winds” and admitted that it could not be narrowed down between Hurricanes Wilma (in 2005) and Frances (in 2004). The contractor had also admitted in deposition that there is “no way to differentiate” rain damage between storms. Similarly, while the engineer’s subsequent affidavit attributed roof, door, window, and interior damage to rain and high winds from Hurricane Wilma specifically, in deposition, he admitted that he was unable to determine what hurricane event caused interior and roof damage and that he had based his conclusions on facts as given to him by the Slominskis. Further, the engineer’s affidavit statement that there was no prejudice since the determination would have been the same as immediately after the hurricane is inconsistent with his prior statement that he could not be sure which hurricane caused *978 the damage. Thus, the subsequent affidavits’ statements were inconsistent with the prior deposition testimony, and therefore, the Slominskis were not entitled to rely upon them in opposition to summary judgment. Without these affidavits, the Slom-inskis failed to meet their burden of proving lack of prejudice to Citizens.
This case is similar to Kramer v. State Farm Fla. Ins. Co., 95 So.3d 303 (Fla. 4th DCA 2012). The insured in that case reported a loss from Hurricanes Frances and Jeanne four years after the events. In defending against the insurance company’s motion for summary judgment, the insured filed an affidavit of an expert, which included such phrases as: “it was not possible to discern the full extent of damages that existed immediately after hurricanes.” Because the affidavit did not rebut the presumption of prejudice caused by the late notice created in Bankers, and in fact bolstered the insurance company’s claim of prejudice, we affirmed the final summary judgment in favor of the insurance company. In this case, the contractor also testified that he could not determine which storm caused the damage and the extent of damage.
We also distinguish our recent decision in Kroener v. Florida Insurance Guaranty Association, 63 So.3d 914 (Fla. 4th DCA 2011), upon which Citizens relies to argue that, where a claim is made over two years from the loss, it is barred as a matter of law.[1] There, the claimants were third-party assignees of the former homeowners’ policy’s benefits. Prior to the assignment, the former homeowners had never made a claim on their policy or notified the insurer of a loss. On appeal, we noted
that the parties agree that the insurance policy itself could not be assigned, but that any authorized benefits that had arisen under the policy during the time of the prior ownership of the property could be assigned. However, to obtain benefits under the policy, the insured was required to “give prompt notice” after a loss occurred.
Id. at 916. We affirmed summary judgment entered in favor of the insurer, agreeing with the trial court’s ruling that “as a matter of law, notice to the insurer of a claim of loss more than two years and two months after the loss occurred was not prompt notice; the untimely reporting of the loss violated the insurance policy and was sufficient to bar the claim.” Id. (first emphasis added).
In Kroener, we relied on the Third District decision in Highlands Insurance Co. v. Kravecas, 719 So.2d 320 (Fla. 3d DCA 1998), in which a third-party buyer attempted to claim benefits under the former owner’s “loss of use” coverage following 1992’s Hurricane Andrew. The third-party buyer did not receive any “loss of use” claim from the former owner’s assignment, since the former owner “had no unreimbursed loss of use,” having formerly received benefits soon after Hurricane Andrew. Id. at 321-22. On this basis, the Third District reversed summary judgment in favor of the third-party buyer, reasoning:
[TJhe purpose of the “loss of use” coverage is to make whole a displaced homeowner. Kravecas is a third-party buyer, who purchased the hurricane-damaged premises after the fact. He is attempting to assert his own claim for loss of potential use, instead of asserting [the former owner’s] claim for actual loss of use. As we view the matter, it would create an unwarranted windfall if the third-party buyer ... could assert his *979 own claim for loss of use, even though he had never been a resident on the premises.
Id. at 322 (footnote omitted).
In both Kroener and Kravecas, the claimant was assigned the right to benefits from a policy held by the original policyholder at the time of the loss event. In both cases, the original policyholders had no unreimbursed losses pending at the túne of assignment, and no claim had been made which could be assigned. Therefore, when the assignment occurred, there were no benefits to assign. The third-party claimants had no entitlement to make a claim. Thus, their untimely claim of loss did violate the insurance policy. Therefore, Kroener, which dealt with a third-party’s entitlement to assigned benefits, is not controlling on the issue before us.
For the foregoing reasons, we affirm the final summary judgment.
WARNER, POLEN and DAMOORGIAN, JJ., concur.

. Kramer also distinguished Kroener on the ground the case was factually similar in that the insured had not overcome the Bankers presumption of prejudice.