# Supreme Court of Florida

————

No. SC20-1284

————

**THE CITY OF WEST PALM BEACH, INC.,**
Petitioner,

vs.

**PETER M. HAVER, et al.,**
Respondents.

September 30, 2021

MUÑIZ, J.

In this certified conflict case we consider the availability of an injunction compelling a city to enforce a zoning ordinance against a third party.[1]

## I.

Peter and Galina Haver live in a City of West Palm Beach neighborhood zoned as single-family, low density residential. The Havers are convinced that their across-the-street neighbor, Miriam Galan, is running a group home in violation of a city zoning

———

1. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.

ordinance. They say that Galan provides room and board to three unrelated residents—two elderly women and a man in his forties. The Havers accuse the male resident of routinely engaging in "unruly conduct" on Galan's front porch, including shouting into his phone and disparaging the Havers with catcalls and other "verbal provocations." And they contend that this behavior, together with increased noise and increased vehicle and foot traffic, has caused them direct harm.

The Havers twice wrote the City's code compliance division to complain about Galan's alleged zoning violation. A month after the Havers' second communication, a city code enforcement officer informed the Havers by e-mail that he had visited Galan's residence to investigate. The Havers' complaint in this case acknowledges that the officer's "report of that visit did not refer to any evidence supporting [the Havers'] allegations that [Galan] provided at her residence room and board to a minimum of two individuals unrelated to her, other than that [the officer] observed at the residence an individual calling himself 'Fernando,' who claimed to live rent-free at the residence."

The officer told the Havers that he would contact them after consulting with his colleagues in the zoning department "to determine what is allowable and/or permitted." But the Havers did not hear back from him. The Havers' complaint says that they have "no knowledge of whether or not [city officials] have decided" if Galan has violated the city's zoning ordinance.[2]

Eventually the Havers filed a five-count lawsuit naming as defendants the City, two city zoning officials, and Galan. This review proceeding only involves claims against the City.[3] Two counts in the complaint sought injunctive relief requiring the City to investigate and, if necessary, take enforcement action against Galan's alleged zoning violation. One count sought a declaratory judgment that the City violated its ordinance by refusing to take enforcement action against Galan. One count sought a writ of

---

2. In response to a letter from the Havers asking whether Galan had a license to operate an adult family home, the Agency for Health Care Administration sent an officer to perform an on-site inspection. The officer relayed that "Galan did operate an Adult Family-Care Home" and that he "had instructed Galan to comply with local zoning and tax regulations."

3. The Havers dismissed their claims against Galan and did not appeal the trial court's dismissal of their claims against the zoning officials.

mandamus requiring the City to determine whether Galan had violated the zoning ordinance and then to take enforcement action. And one count sought a writ of certiorari "to quash any quasi-judicial decisions or acts taken by the City . . . in connection with their refusal to enforce" the zoning ordinance against Galan.

The trial court dismissed all the Havers' claims against the City. It did not explain its reasoning but it cited the Third District's decision in *Detournay v. City of Coral Gables*, 127 So. 3d 869 (Fla. 3d DCA 2013). Over a dissent, the *Detournay* majority had held: "Under the doctrine of separation of powers, [a city's] discretion to file, prosecute, abate, settle, or voluntarily dismiss a building and zoning enforcement action is a purely executive function that cannot be supervised by the courts, absent the violation of a specific constitutional provision or law." 127 So. 3d at 870-71.

In the decision under review, the Fourth District affirmed the trial court's dismissal of the Havers' mandamus and certiorari claims. *Haver v. City of West Palm Beach, Inc.,* 298 So. 3d 647 (Fla.

- 4 -

4th DCA 2020).  But the district court reversed as to the claims for injunctive and declaratory relief.[4]

The parties' briefing before us, and therefore our review, focuses on the district court's reinstatement of the Havers' claims for injunctive relief.  The Fourth District first determined that the trial court was right to follow *Detournay*, a district court decision directly on point and the only such decision.  But the Fourth District then went on to conclude that the Third District itself had "failed to apply binding precedent from the Florida Supreme Court." *Id.* at 648.  According to the Fourth District, the Havers' injunctive claims "were specifically permitted by" this Court's decision in *Boucher v. Novotny*, 102 So. 2d 132 (Fla. 1958).  298 So. 3d at 653. The district court therefore remanded those claims, with instructions for the trial court to determine "whether the Havers

---

4.  As to the declaratory judgment claim, the Fourth District held: "Count II of the complaint sought a declaratory judgment on the Neighbor's activities and that the City's refusal to enforce its zoning classification was itself an ordinance violation.  We also reverse the court's order dismissing count II.  On remand, the court should determine whether the allegations are otherwise sufficient under chapter 86, Florida Statutes, as we decline to address the issue in the first instance." *Haver*, 298 So. 3d at 653.

- 5 -

have adequately pleaded special injuries as required by" *Boucher*. *Id.* We will discuss *Boucher*'s facts and holding in due course.

Along with its resolution of the Havers' appeal, the Fourth District certified conflict with *Detournay* and with the Second District's decision in *Chapman v. Town of Reddington Beach*, 282 So. 3d 979 (Fla. 2d DCA 2019).[5] We granted the City's petition for discretionary review.

## II.

The Havers' complaint sought an injunction requiring the City to enforce its zoning ordinance against Galan. Specifically, the complaint asked the court to force the City (1) to further investigate and determine whether Galan was in violation of the ordinance and (2) to take enforcement measures against any violation. Under the zoning ordinance itself, those measures could include ordering Galan to comply with the ordinance and, if necessary, the

---

5. In *Chapman,* the Second District decided the certified conflict issue "without comment." 282 So. 3d at 980. That case merits no further discussion here.

"commence[ment of] appropriate legal action" by the City.[6] West

Palm Beach, Fla., Code of Ordinances § 94-34 (b)(2)(2003).

As we explained, the Fourth District in the decision under

review deemed an injunction of this nature "specifically permitted"

by our decision in *Boucher*. *Haver*, 298 So. 3d at 653. Betraying

some skepticism about this result, the district court issued

---

6. West Palm Beach Ordinance § 94-34 states, in pertinent part:

b. *Violations and enforcement procedures.*
1. *Planning and zoning administrator investigations.* The planning and zoning administrator or his designee shall have the authority to investigate alleged violations of this chapter by inspecting property, obtaining the signed statements of prospective witnesses, obtaining photographic documentation of violations, and performing such other activities as are lawful and necessary for the complete investigation of alleged zoning violations. Such designee shall be a planner employed by the city and shall be designated in writing by the planning and zoning administrator.
2. *Violations.* Where it is determined that a violation of this chapter exists, the planning and zoning administrator or his designee shall notify the violator in writing and order compliance. The planning and zoning administrator or his designee shall order discontinuance of an illegal use of land, buildings, or structures; removal of illegal buildings or structures, or additions, alterations, or structural changes thereof; or discontinuance of any illegal work being done. If a violation of these regulations continues, the planning and zoning administrator or his designee shall commence appropriate legal action.

repeated disclaimers about a lower court's duty to follow our precedents and said that it was up to us whether to "overrule *Boucher*." *Id.* at 648, 653-54. The Havers' defense of the Fourth District's decision echoes the *stare decisis* theme—minus the skepticism—and urges us not to "recede from" *Boucher*.

For its part, the City argues that the Fourth District and the Havers have misconstrued *Boucher* and that the district court erred by reinstating the Havers' claims for injunctive relief. Given the centrality of *Boucher* to the issues presented, we will start there.

A.

The plaintiffs in *Boucher* were property owners in the City of Clearwater who lived across the street from a newly built motel. *Boucher*, 102 So. 2d at 133. They alleged that the motel building violated the setback requirements of a city zoning ordinance and that the violation had been evident in the plans for the motel. *Id.* When the city first issued a building permit for the motel, the plaintiffs objected, and the city revoked the permit. *Id.* But the city later reinstated the permit, allegedly "without public notice as required by the zoning ordinance." *Id.* at 134. Although the City of Clearwater and a city building inspector were among the defendants

in *Boucher*, the Court's opinion does not say what relief the plaintiffs sought against the government defendants in the case.[7]

Instead, the Court's description of the requested remedy focused on the other defendants—the owners of the motel. We characterized the lawsuit as one "instituted by appellants Boucher to obtain mandatory injunctive relief to compel [the motel owners] to remove the allegedly illegal encroachments which they claim were constructed in violation of the setback requirements of the zoning ordinance." *Boucher*, 102 So. 2d at 134. And we framed the "determining point" as "whether the [plaintiffs] sufficiently alleged damages peculiar to themselves to enable them to maintain a cause of action." *Id.* at 133.

To put in context the Court's description of the case, it is important to understand that the cause of action in *Boucher* was not new. Comprehensive zoning laws originated in the United

---

7. The Court did say that it saw a "striking resemblance," *Boucher*, 102 So. 2d at 136, to the situation in *Fortunato v. City of Coral Gables*, 47 So. 2d 321 (Fla. 1950). The plaintiff in *Fortunato* had sought "to enjoin the City of Coral Gables from issuing a building permit to the defendant" for the construction of an apartment house. *Id.* at 322. And, as in *Boucher*, the *Fortunato* plaintiff alleged that the city had issued the permit in violation of applicable notice requirements.

States in the early twentieth century.[8]  Within a few decades courts around the country had recognized a cause of action allowing a private party to obtain an injunction against another private party's violation of a municipal zoning ordinance.[9]  This passage from the Connecticut Supreme Court in 1927 captures the prevailing rationale underlying those court decisions: "The primary duty of enforcing these regulations rested upon the zoning commission. The right to enforce them by injunction, where their violation had resulted, is now resulting, or will result in special damage to one's property, exists in the one injured, and is not dependent upon his having requested the public authorities in charge to enforce the violation and their refusal or failure to perform their duty." *Fitzgerald v. Merard Holding Co.*, 138 A. 483, 486 (Conn. 1927).

As to standing to maintain such an action, the majority rule required the plaintiff to show special damages—that is, "damages differing in kind rather than in degree from the damages suffered by

---

8.  1 James Metzenbaum, *The Law of Zoning* 7-11 (2nd ed. 1955).

9.  3 E.C. Yokley, *Zoning Law and Practice* § 22-5 (3rd ed. 1967) (citing cases from several states).

the people as a whole." *Boucher*, 102 So. 2d at 135. But relying on cases from a handful of states, the plaintiffs in *Boucher* asked us to reject the majority rule and to hold instead that "the mere violation of a zoning ordinance, regardless of special damage, produces a right of action in favor of a complaining citizen the use of whose property has been restricted by the same ordinance." *Id.*

Our Court chose to adhere to the majority rule. We explained that a special damages requirement was consistent with our precedents involving "the abatement of alleged nuisances resulting from threatened or consummated municipal conduct." *Id.*[10] And we further reasoned that such a requirement was supported both by "the numerical weight of authority" and by "the better reasoned cases." 102 So. 2d at 135.

After establishing the applicable standing requirement, our Court went on to measure the Bouchers' complaint against that standard, and we concluded that the plaintiffs' allegations were

---

10. Although zoning law and nuisance law are different in substance, the special damages standing rule is derived from nuisance law. *See* George B. Foss, Jr., *Interested Third Parties in Zoning*, 12 Univ. Fla. L. Rev. 16, 29 (1959).

insufficient.[11] We therefore affirmed the trial court's dismissal of the Bouchers' complaint. *Boucher*, 102 So. 2d at 137. There was no injunction for the Court to review. Nor was there occasion for the Court to determine whether the government defendants had violated the law and, if so, what remedies might have been available against them.

The Fourth District appears to have focused not on the holding in *Boucher*, but on the opinion's background discussion setting the stage for our resolution of the standing issue. In the run-up to our adoption of the special damages requirement, we said:

> We have on a number of occasions held that where municipal officials threaten or commit a violation of municipal ordinances which produces an injury to a particular citizen which is different in kind from the injury suffered by the people of the community as a whole then such injured individual is entitled to injunctive relief in the absence of an adequate legal remedy. With equal consistency, however, we have likewise held that in order to sustain a complaint for relief against threatened or consummated municipal

---

11. But in *Renard v. Dade County*, 261 So. 2d 832, 837-38 (Fla. 1972), we said: "[I]n the twenty years since the *Boucher* decision, changed conditions, including increased population growth and density, require a more lenient application of [the special damages] rule. The facts of the *Boucher* case, if presented today, would probably be sufficient to show special damage."

action such as the creation of a nuisance or the blocking of a street the injury suffered by the complaining individual must be special and peculiar to himself and not merely different in degree from that suffered by the remainder of the community.

*Id.* at 134-35.

The district court seems to have gleaned from this passage a broad rule. In its view, if the plaintiff can establish special damages from a zoning violation, injunctive relief is available against a city without regard to its alleged role in the violation or the content of the injunction being sought. In its decision, the Fourth District explicitly agreed with the Havers' argument that "*Boucher* provides a remedy for zoning laws in the form of a claim for declaratory and injunctive relief *against a municipality and a violator.*" *Haver*, 298 So. 3d at 650 (emphasis added).

This misreads *Boucher*. For one thing, our Court in *Boucher* referred to precedents where a municipality had violated its own ordinance. In *Boucher* itself, for example, the plaintiffs alleged that the city had issued a permit illegally. In this case, the Havers' complaint goes to great lengths to establish Galan's (the neighbor's) violation, but it does not allege that the City itself violated the ordinance. Nowhere does *Boucher* say or imply that a third party's

violation of the ordinance, without more, would justify an injunction requiring the City to enforce the ordinance against the third party.

Moreover, to the extent that the *Boucher* Court broadly discussed precedents involving a municipality's "violation" of an ordinance, it would be a mistake to divorce those comments from the body of case law that the Court was discussing. None of the precedents cited in *Boucher* involved a municipal ordinance "violation" that consisted of a city's failure to take enforcement action against a third party. And because our Court has never addressed such a "violation," we have not considered what type of judicial relief, if any, might be available in that circumstance. It would be wrong to simply assume, based on *Boucher*, that all ordinance violations by a municipality are equally remediable through injunctive relief.

The Havers also maintain that, after *Boucher*, our Court "reconfirmed" their broad understanding of a "*Boucher* cause of action." The two decisions they cite to support this argument are *Renard v. Dade County*, 261 So. 2d 832 (Fla. 1972), and *Skaggs-Albertson's v. ABC Liquors, Inc.,* 363 So. 2d 1082 (Fla. 1978). We think that the Havers get these cases wrong, too.

Both *Renard* and *Skaggs-Albertson's* centered on standing issues. *Renard* involved a challenge to a county's decision to rezone a parcel of property. *Renard*, 261 So. 2d at 834. *Skaggs* involved a challenge to a county's decision to issue an alcoholic beverage permit. *Skaggs*, 363 So. 2d at 1086. In neither case did the plaintiff seek injunctive relief to compel a government defendant to take enforcement action against a third party's alleged violation of a zoning ordinance. While our opinions discussed *Boucher* and its special damages holding, neither said anything that would support the cause of action and remedy at issue in this case.

To sum up: we believe that the Havers and the Fourth District have misread *Boucher*. Giving the case its broadest but still reasonable reading, *Boucher* assumed the availability of injunctive relief against a city in some circumstances where the city violates its own zoning ordinance. The Havers allege no such violation. Neither *Boucher*, nor any other case of this Court that has been called to our attention, authorized a claim for injunctive relief against a city in the circumstances presented here.

The question remains: should this Court now approve such a remedy? No. As we explained, the Havers in this proceeding have

limited their arguments to a *stare decisis*-based defense of an erroneous interpretation of *Boucher.* They have not given us arguments from first principles to justify their desired cause of action and remedy.

We decline to endorse a judicially created remedy that would so exceed current limits on the exercise of the judicial power. The Havers invite judicial interference with administrative enforcement decisions of a kind that traditionally have been considered discretionary and that embody value-laden judgments about the proper allocation of scarce governmental resources. *Cf. Heckler v. Chaney*, 470 U.S. 821, 831-33 (1985). And they ask us to subject these decisions to judicial review even in the absence of allegations that the government itself has acted illegally. If judicial oversight of such matters is to be expanded, that innovation must be authorized by the Legislature or by a city's own ordinance.

### B.

The majority in *Detournay*, the principal conflict case, did not discuss *Boucher.* The Fourth District certified conflict based on its own interpretation of *Boucher* and its view that the result in *Detournay* was inconsistent with that case. For the reasons we

have explained, we disagree with the Fourth District's interpretation of our precedent. And we see no disharmony between the holding of *Boucher* and the result in *Detournay*.

*Detournay* involved a homeowners' association lawsuit to "force the City [of Coral Gables] to pursue its enforcement actions" against a private party in a zoning violation case. 127 So. 3d at 871. As we mentioned at the outset, the *Detournay* majority invoked the "doctrine of separation of powers" in rejecting the association's claims against the city. The Third District also based its decision on principles announced in *Trianon Park Condominium Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912 (Fla. 1985), a case about sovereign immunity in the tort damages context. The Fourth District itself called the *Detournay* majority's reasoning "compelling." *Haver*, 298 So. 3d at 648.

The parties and the *amici* have staked out various positions on whether the *Detournay* court was right to invoke the constitutional separation of powers doctrine in a case involving a municipal (as opposed to a state-level) defendant. They also dispute the applicability of tort-based sovereign immunity concepts in a case that involves neither tort-based duties nor monetary relief. Given

our clarification of *Boucher*, we need not address these potentially complicated issues now. *See generally* Douglas Laycock & Richard L. Hasen, *Modern American Remedies* 488 (5th ed. 2019) ("The law of remedies against governments and government officials is a vast and complex body of doctrine, full of technical distinctions, fictional explanations, and contested compromises.").

III.

We quash the decision of the Fourth District in part. The cause is remanded with instructions that the Havers' claims against the City for injunctive and declaratory relief be dismissed.[12] We approve the result of the Third District's decision in *Detournay*.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

Fourth District - Case No. 4D19-1537

---

12. Because in the circumstances of this case the Havers' declaratory judgment claim is inseparable from their meritless claims for injunctive relief, the trial court's dismissal of the declaratory judgment claim should have been affirmed.

(Palm Beach County)

Kenneth B. Bell, Joseph W. Jacquot, and Lauren V. Purdy of Gunster, Yoakley & Stewart, P.A., Tallahassee, Florida; and Kimberly L. Rothenburg, City Attorney, and K. Denise Haire, Assistant City Attorney, West Palm Beach, Florida,

     for Petitioner

Peter M. Haver, pro se, West Palm Beach, Florida,

     for Respondents

Ashley Moody, Attorney General, Amit Agarwal, Solicitor General, James H. Percival, Chief Deputy Solicitor General, and Evan Ezray, Deputy Solicitor General, Tallahassee, Florida,

     for Amicus Curiae State of Florida

Kraig Conn and Rebecca O'Hara of Florida League of Cities, Tallahassee, Florida, and Edward G. Guedes of Weiss, Serota, Helfman, Cole & Bierman, P.L., Coral Gables, Florida,

     for Amici Curiae Florida League of Cities, City of Aventura, Town of Cutler Bay, and Village of Pinecrest

Frances Guasch De La Guardia and Suzanne M. Aldahan of Holland & Knight LLP, Miami, Florida, and Miriam Soler Ramos, City Attorney, Coral Gables, Florida,

     for Amicus Curiae City of Coral Gables

Frank A. Shepherd of Gray Robinson, P.A, Miami, Florida, Victoria Méndez, City Attorney, John A. Greco, Deputy City Attorney, and Kerri L. McNulty, Senior Appellate Counsel, on behalf of City of Miami, Miami, Florida, and Sonja Dickens, Chairperson, City Attorney's Committee, on behalf of Miami-Dade League of Cities, Miami Gardens, Florida,

for Amici Curiae City of Miami and Miami-Dade League of Cities